[L. A. No. 29571. In Bank. Jan. 22, 1969.]

ARDEN BOVEE HEYER et al., Plaintiffs and Appellants, v. JOSEPH LAWRENCE FLAIG, Defendant and Respondent.

Vernon S. Gray for Plaintiffs and Appellants.

Brill, Hunt, DeBuys & Burby, Mitchell L. Lathrop, Crider, Tilson & Ruppé and Abe Mutchnick for Defendant and Respondent.

TOBRINER, J.—This case presents a single, basic question: When does the statute of limitations commence to run against an intended beneficiary of a will who, under the authority of *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal. Rptr. 821, 364 P.2d 685], acquires a right of action against an attorney for malpractice in negligently failing to fulfill the testamentary directions of his client? Under the alleged facts of this case, we conclude that the limitations period starts from the date that the cause of action accrues: namely, the incidence of the testatrix' death when the negligent failure to perfect the requested testamentary scheme becomes irremediable and the impact of the injury occurs. Accordingly, the trial court erroneously sustained a demurrer to plaintiff's complaint on the ground that the statute of limitations bars the present action brought later than two years[1] after the defendant drafted the will. Since the plaintiffs filed their complaint within two years of the testatrix' death, the cause avoids the statutory bar.

The plaintiffs' complaint sets forth inter alia the following allegations: In December 1962 Doris Kilburn, the testatrix, retained defendant Flaig to prepare her will. She told defendant that she wished all of her estate to pass to her two daughters, plaintiffs in this action. She also told him that she intended to marry Glen Kilburn. On December 21, 1962, Doris Kilburn executed a will prepared by defendant. On December 31, 1962, she married Glen Kilburn.

The will purports to leave the entire estate of Doris Kilburn to the plaintiffs. The testament, however, does not mention the testatrix' husband, except that it names him executor. On July 9, 1963, Doris Kilburn died; thereafter the Los Angeles County Superior Court admitted to probate the above-described document as her last will and testament. In these probate proceedings, Glen Kilburn claimed a portion of the estate as a post-testamentary spouse under Probate Code section 70.[2]

Plaintiffs allege that defendant negligently failed to advise Doris Kilburn of the consequences of a post-testamentary

---

[1]The two-year limitations period of Code of Civil Procedure section 339, subdivision 1, governs legal malpractice actions. (*Alter* v. *Michael* (1966) 64 Cal.2d 480 [50 Cal.Rptr. 553, 413 P.2d 153].)

[2]"If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless . . . the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received."

marriage, and negligently failed to include in the will any provision as to the intended marriage. Plaintiffs allege further that, subsequent to the marriage, and up until the date of testatrix' death, the defendant negligently failed to advise her of the legal consequences of omitting from the will any provision relative to her husband's claim to a share of her estate. Plaintiffs allege that this negligence caused them to suffer damages in the amount of $50,000. They also pray for $50,000 punitive damages on the ground that defendant proceeded maliciously, in wanton disregard of their rights.

Alleging uncertainty, ambiguity, unintelligibility, failure to state facts sufficient to constitute a cause of action, and failure to state a cause of action by reason of the bar of the statute of limitations, section 339, subdivision 1, of the Code of Civil Procedure, defendant demurred to the complaint. On the stated basis that the statute of limitations bars the action because plaintiffs filed the complaint later than two years after the commission of the ''negligent act'' (presumably the drafting of the will),[3] the trial court sustained the demurrer. Following plaintiffs' failure to take advantage of the court's leave to amend, the court granted defendant's motion to dismiss the action pursuant to section 581, subdivision 3, of the Code of Civil Procedure. From this dismissal plaintiffs appeal.

1. *An attorney who negligently fails to fulfill a client's testamentary directions incurs liability in tort for violating a duty of care owed directly to the intended beneficiaries.*

In the case of *Lucas* v. *Hamm, supra,* 56 Cal.2d 583, we embraced the position that an attorney who erred in drafting a will could be held liable to a person named in the instrument who suffered deprivation of benefits as a result of the mistake. Although we stated that the harmed party could recover as an intended third-party beneficiary of the attorney-client agreement providing for legal services, we ruled that the third party could also recover on a theory of tort liability for a breach of duty owed directly to him. At the heart of our decision in *Lucas* v. *Hamm* lay this recognition of duty.

In the earlier case of *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358], we had held that a notary public who negligently failed to direct proper attesta-

---

[3]The trial judge relied upon the general rule for attorney malpractice actions that the statute of limitations ''begins to run at the time of the negligent act, *not* at the time of discovery of the negligence. [*Bustamante* v. *Haet* (1963)] 222 CA 2d 414 [35 Cal.Rptr. 176].''

tion of a will became liable in tort to an intended beneficiary who suffered damage because of the invalidity of the instrument. In that case, the defendant argued that the absence of privity deprives a plaintiff of a remedy for negligence committed in the performance of a contract. In rejecting this contention we pointed out that the inflexible privity requirement for such a tort recovery has been virtually abandoned in California. (49 Cal.2d at pp. 649-650.) We then analyzed the bases for imposing such a duty: ''The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.''

Applying the *Biakanja* criteria to the facts of *Lucas,* the court found that attorneys incur a duty in favor of certain third persons, namely, intended testamentary beneficiaries. In proceeding to discuss the contractual remedy of such persons as the plaintiffs in *Lucas,* we concluded that ''as a matter of policy, . . . they are entitled to recover as third-party beneficiaries.'' (56 Cal.2d at p. 590.) The presence of the *Biakanja* criteria in a contractual setting led us to sustain not only the availability of a tort remedy but of a third-party beneficiary contractual remedy as well. This latter theory of recovery, however, is conceptually superfluous since the crux of the action must lie in tort in any case; there can be no recovery without negligence. This reading of *Lucas* is reinforced by the following language recited with approval in the case of *Eads* v. *Marks* (1952) 39 Cal.2d 807, 811 [249 P.2d 257]: '' 'It has been well established in this state that if the cause of action arises from a breach of a promise set forth in the contract, the action is ex contractu, but if it arises *from a breach of duty growing out of the contract* it is ex delicto. . . .' ''

In the recent case of *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609], we held that a lending institution, which financed and ''shared in the control'' (69 Cal.2d at p. 863) of a residential tract development, and ''cooperated'' with the developer in that undertaking (*id.*), incurred liability in tort to the buyers of improperly built houses. We said that the lending

institution owed a duty to the purchasers "to exercise reasonable care to prevent the construction and sale of seriously defective homes" (69 Cal.2d at p. 867). *Connor,* like the preceding cited cases, recognizes that liability may flow from relationships which are not expressed by contract between the parties, not in "privity" with each other, and that such duty could emanate from the policy considerations described in *Biakanja* v. *Irving, supra,* 49 Cal.2d 647. Indeed, the early common law posited "rights and duties upon the relationship of parties within the socio-economic system rather than upon factors, such as consensual agreement, dependent on the will of individual litigants" and such relationship concepts served as the major framework of the legal structure. (See Tobriner and Grodin, *The Individual and the Public Service Enterprise in the New Industrial State* (1967) 55 Cal.L.Rev. 1247, 1249-1250.) The *Biakanja* line of cases does no more than apply to the issues there involved these concepts of duties and rights based upon the relationship between the tortfeasor and the injured parties.

Turning to the present case we therefore concentrate on the tortious aspect of defendant's conduct. We inquire as to whether there was such a duty; the breach, if any; the possibility of the bar of the statute of limitations.

When an attorney undertakes to fulfill the testamentary instructions of his client, he realistically and in fact assumes a relationship not only with the client but also with the client's intended beneficiaries. The attorney's actions and omissions will affect the success of the client's teatamentary scheme; and thus the possibility of thwarting the testator's wishes immediately becomes foreseeable. Equally foreseeable is the possibility of injury to an intended beneficiary. In some ways, the beneficiary's interests loom greater than those of the client. After the latter's death, a failure in his testamentary scheme works no practical effect except to deprive his intended beneficiaries of the intended bequests. Indeed, the executor of an estate has no standing to bring an action for the amount of the bequest against an attorney who negligently prepared the estate plan, since in the normal case the estate is not injured by such negligence except to the extent of the fees paid; only the beneficiaries suffer the real loss. We recognized in *Lucas* that unless the beneficiary could recover against the attorney in such a case, no one could do so and the social policy of preventing future harm would be frustrated.

The duty thus recognized in *Lucas* stems from the attorney's undertaking to perform legal services for the client but

reaches out to protect the intended beneficiary. We impose this duty because of the relationship between the attorney and the intended beneficiary; public policy requires that the attorney exercise his position of trust and superior knowledge responsibly so as not to affect adversely persons whose rights and interests are certain and foreseeable.

Although the duty accrues directly in favor of the intended testamentary beneficiary, the scope of the duty is determined by reference to the attorney-client context. Out of the agreement to provide legal services to a client, the prospective testator, arises the duty to act with due care as to the interests of the intended beneficiary. We do not mean to say that the attorney-client contract for legal services serves as the fundamental touchstone to fix the scope of this direct tort duty to the third party. The actual circumstances under which the attorney undertakes to perform his legal services, however, will bear on a judicial assessment of the care with which he performs his services.

We turn now to the facts of the present case. The complaint alleges that defendant negligently prepared a will purporting to carry out the testatrix' testamentary intention, to give her entire estate to the plaintiffs. The defendant's alleged negligence consisted of his omitting from the will any language which would defeat the rights of the testatrix' husband who could claim a statutory share of the estate as a post-testamentary spouse under Probate Code section 70.

In rendering legal services, an attorney must perform in such manner as " 'lawyers of ordinary skill and capacity commonly possess and exercise' " (*Estate of Kruger* (1900) 130 Cal. 621, 626 [63 P. 31] ). A reasonably prudent attorney should appreciate the consequences of a post-testamentary marriage, advise the testator of such consequences, and use good judgment to avoid them if the testator so desires. In the present case, defendant allegedly knew that the testatrix wished to avoid such consequences. Despite his knowledge that the testatrix intended to marry following the execution of the will, the attorney drafted a will which arguably lacked adequate provision against such consequences (cf. *Estate of Ryan* (1923) 191 Cal. 307 [216 P. 366] ). Furthermore, the complaint alleges that defendant negligently failed to advise the testatrix that she should change her will after her marriage and continued this negligent omission until the time of her death. The complaint states a sufficient cause of action in tort under the doctrine of *Lucas*; we proceed, there-

fore, to determine when the cause of action accrued so as to commence the running of the statute of limitations.

2. *The statute of limitations does not commence to run until the testatrix' death, at which time the defendant's negligence becomes irremediable and before which time the plaintiffs possess no recognized legal interest in the testatrix' estate.*

The continuing nature of the defendant's conduct as alleged in the complaint prevents the running of the statute of limitations before the testatrix' death. The negligence involved in the original drafting of the will continued after that date in defendant's failure to advise the testatrix of the possible undesired consequences if she died without having changed her will.

As to the plaintiffs' interests, defendant's action in negligently drafting the will and his omission in negligently failing to correct his error before the testatrix' death caused equally damaging consequences. Defendant owed a duty of care to the plaintiffs to effectuate in a non-negligent manner the testamentary scheme of the testatrix. Such a duty may extend beyond the date of the original drafting of the will when the attorney's negligent acts created a defective estate plan upon which the client might rely until her death. The duty effectively to fulfill the desired testamentary scheme continued until the testatrix' death, when the testatrix' reliance became irrevocable. Because defendant owed plaintiffs this continuing duty the cause of action did not accrue nor the statute of limitations commence to run until the defendant's negligence became irremediable.[4]

A second basic reason that bars the running of the statute until the testatrix' death lies in the fact that plaintiffs could not bring an action against defendant before that time. A statute of limitations does not commence to run until a cause of action accrues, and "a cause of action . . . invariably accrues when there is a remedy available." (*Irvine* v. *Bossen* (1944) 25 Cal.2d 652, 658 [155 P.2d 9].)

An intended testamentary beneficiary acquires no recognized legal rights under a will until the testator dies, at

---

[4]See *Fazio* v. *Hayhurst* (1966) 247 Cal.App.2d 200, 203 [55 Cal.Rptr. 370], wherein the court stated that when an action taken by a client, in reliance upon an attorney's advice, was freely revocable, the cause of action might not accrue until such action became irrevocable; see also, *Shelly* v. *Hansen* (1966) 244 Cal.App.2d 210, 215 [53 Cal.Rptr. 20]; cf. *Lally* v. *Kuster* (1918) 177 Cal. 783, 791 [171 P. 961]; *Eckert* v. *Schaal* (1967) 251 Cal.App.2d 1, 6 [58 Cal.Rptr. 817]; *Walker* v. *Pacific Indem. Co.* (1960) 183 Cal.App.2d 513 [6 Cal.Rptr. 924].

which time his interest will vest or, indeed, possibly fail. (Cf. *Estate of Harvey* (1958) 164 Cal.App.2d 330, 332 [330 P.2d 478].) Before her death, the testatrix in the present case could have altered her will at any time and for any reason. Furthermore, she could have changed her testamentary intention to conform to the actual disposition of her estate under the "defective" will; in such a case, the plaintiffs here would have suffered no actionable injury. Before the testatrix' death, the plaintiffs can state no cause of action because until that time there can be no injury.

To adopt a rule which would start the running of the statutory period from the date of some "original" negligence, we would be compelled to accept the absurd proposition that the only plaintiff who could recover under the doctrine of *Lucas* v. *Hamm, supra,* 56 Cal.2d 583, would be one whose testator had died and who could file a complaint prior to two years after the drafting of the will or after the occurrence of some other original negligent act. Such a rule would vitiate the decision of *Lucas* by allowing the right to enforce the duty there recognized to turn on mere fortuity.

We cannot accept defendant's argument that the application to the instant case of the present rule with respect to legal malpractice actions, i.e., that the statutory period commences to run from the time of the negligent act, requires a different result here. Cited by defendant and invoked by the trial court, that rule has recently been included in dicta by this court in the case of *Alter* v. *Michael, supra,* 64 Cal.2d 480, 483: ". . . the two-year period which governs a legal malpractice action runs from the time of the negligent acts (*Bustamante* v. *Haet* (1963) *supra,* 222 Cal.App.2d 414-415, and cases there cited)." The failure of the party injured to discover the negligence does not toll the running of the statute. (*Eckert* v. *Schaal, supra,* 251 Cal.App.2d 1, 6.) The defendant argues that, under this rule, even if the testatrix herself had filed a complaint on the date of the present action the statute would have barred it. If plaintiffs here are not also barred, says defendant, we violate the rule that a third-party beneficiary is as much subject to the statute of limitations as the promisee to the contract which creates the rights of the beneficiary. (*Bogart* v. *George K. Porter Co.* (1924) 193 Cal. 197 [223 P. 959, 31 A.L.R. 1045].)

This argument proceeds from the erroneous assumption that the rights of an intended testamentary beneficiary recognized in *Lucas* flow exclusively from the attorney-client agreement. As we discussed *supra,* the court in *Lucas* merely extended

the principle of *Biakanja* v. *Irving, supra,* 49 Cal.2d 647, to attorneys, holding that by reason of public policy a duty of care arises directly in favor of a third person. Our analysis of the decision in *Lucas* points to the conceptual superfluity of the third-party beneficiary rationale of that case: the right of action sounds in tort and enures by reason of our determination that public policy requires the recognition of a duty of care on the part of the attorney which accrues directly to the third party, the intended beneficiary. The rule of *Bogart* v. *George K. Porter Co., supra,* 193 Cal. 197, should not be rigidly applied to a case in which the policy behind the rule may be inappropriate.[5]

A rule placing the beneficiary in the same position as the testatrix as to the running of the statute of limitations would be viable only if an action by either were equally available and vindicated identical substantive rights. We have noted that the intended beneficiary of a will acquires no cause of action until his testator's death, whereas the prospective testator may sue immediately to recover the cost of drafting the will. Furthermore, the interests at stake in an action by the intended beneficiary and in an action by the testator differ. The former seeks to recover an intended bequest which has been denied him because of the attorney's negligence. The latter seeks to perfect his testamentary scheme, now defective because of the attorney's negligence. In the latter case, the plaintiff's damages will be slight and the consequences of finding a statutory bar will be mild since the testator can create a new and effective estate plan.[6]

The intended beneficiary, on the other hand, suffers a great and irrevocable loss: he has nowhere to turn but to the attorney for compensation. Indeed, *Lucas* recognizes that unless the beneficiary can recover from the attorney the beneficiary suffers a wrong without a compensating remedy. The duty which the attorney owes the beneficiary is separate and dis-

---

[5]Even conceding the validity of alternative theories of recovery arising from the ''alternative'' rationalia of *Lucas,* we suggest defendant's argument must fail because of the rule that when a case sounds both in contract and in tort the plaintiff has an election as to which theory of recovery he will pursue. (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 663 [328 P.2d 198]; *Cason* v. *Glass Bottle Blowers Assn.* (1951) 37 Cal.2d 134, 142 [231 P.2d 6, 21 A.L.R.2d 1387].) An election to pursue the action strictly in tort would destroy an automatic application of the *Bogart* rule to the present case.

[6]After the testator's death, no one but the intended beneficiary has an interest in the defeated bequest. The estate could sue only for the attorney's fees expended since presumably there will have been no other diminution of the estate funds due to the error.

tinct from the duty owed the client; so, too, are the remedies for breaches of these duties. Hence, we violate no policy of *Bogart* in holding that the rights of the beneficiary may in some instances rise higher than those of his testator.[7]

 In the present case we have determined that the plaintiffs' action would have been premature until the testatrix' death and that the defendant's negligence was continuing and incomplete until that time. Hence the statute of limitations does not commence to run until the testatrix'

---

[7]Throughout this discussion we have assumed that if the testatrix had lived and filed suit on the date of the present action, her action would be barred by the statute of limitations under the rule that the statutory period commences to run from the negligent act and not from the date of discovery of the negligence. We note the contrasting rule as to medical malpractice cases: the period does not commence to run until the discovery of the negligence. Although the latter rule applies to a different statute of limitations (Code Civ. Proc., § 340, subd. 3, one year), both rules stem from judicial decisions. In fact, the rule with respect to medical malpractice formerly was the same as the present rule for legal malpractice. (*Gum* v. *Allen* (1931) 119 Cal.App. 293 [6 P.2d 311].) The case which established the modern rule for medical malpractice cases (*Huysman* v. *Kirsch* (1936) 6 Cal.2d 302 [57 P.2d 908]) involved a physician's negligently leaving a tube in the plaintiff's body following an operation. The plaintiff did not discover the negligence and bring suit until after one year from the date of the operation.

In announcing the rule of postponed accrual (until discovery of the negligence) in medical malpractice actions, we stated three theories in support of our conclusion: "(1) There was a continuing duty to remove the tube, and hence a continuing tort, giving rise to new causes of action. (6 C.2d 308.) (2) The operation might be viewed as incomplete until removal of all the appliances used (6 C.2d 311.) (3) The principle of the occupational disease cases was applicable, i.e., the statute should not run against the cause of action for such an injury during the time the plaintiff is unable, with care and diligence, to ascertain the cause. In this connection the court emphasized the fact of plaintiff's sole reliance on defendant physician for information as to her condition. (6 C.2d 312.)" (1 Witkin, Cal. Procedure (1954) Actions, § 133, p. 641.)

We note that the very theories which led to the rule in medical malpractice cases that the statute runs only from the date of discovery of the negligence could be applied to the instant situation: (1) There was a continuing duty on the part of defendant to correct the estate plan to conform in effect to the testatrix' true intentions, and hence a continuing tort up until the time of death giving rise to new causes of action. (2) The rendering of legal services with respect to the testamentary plan might be viewed as incomplete until the testatrix' death, when the will would become effective and when the attorney could no longer correct his original mistake. (3) The fact of defendant's asserted superior knowledge and skill and the testatrix' reliance on the defendant to order her affairs competently and in conformance with her testamentary desires argues strongly that the statute should not run against the testatrix as long as she was unable, with care and diligence, to ascertain the negligence. The judicial rule against postponed accrual of the statute of limitations in legal malpractice actions rests upon a tenuous basis. In any event, in the present case we have found, for the reasons expressed in the text, that, with respect to the intended beneficiaries of a will, the statute of limitations for attorney negligence cannot commence to run before the testatrix' death.

death and consequently the trial judge erroneously sustained defendant's general demurrer on the ground of the bar of the statute of limitations.

We have concluded that the complaint in the present action withstands defendant's general demurrer. Although defendant also filed special demurrers, the trial court did not rule upon them. We do not decide that the complaint was not subject to the special demurrers; the trial court may in its discretion require the clarification of the alleged uncertainties and ambiguities. (*Stowe* v. *Fritzie Hotels, Inc.* (1955) 44 Cal. 2d 416, 425-426 [282 P.2d 890]; *Wennerholm* v. *Stanford University School of Medicine* (1942) 20 Cal.2d 713, 720 [128 P.2d 522, 141 A.L.R. 1358]; *Guilliams* v. *Hollywood Hospital* (1941) 18 Cal.2d 97, 104 [114 P.2d 1].)

The judgment of dismissal is reversed with directions to the trial court to overrule the general demurrer and to rule on the points presented by the special demurrers.

Traynor, C. J., Peters, J., Burke, J., and Sullivan, J., concurred.

Mosk, J., concurred in the judgment.

McCOMB, J.—I dissent. I would affirm the orders of dismissal for the reasons expressed by Mr. Justice Bishop in the opinion prepared by him for the Court of Appeal in *Heyer* v. *Flaig* (Cal.App.) 67 Cal.Rptr. 92.