Prabhabati **CHATTERJEE**

v.

**Paul H. DUE**

**Civ. A. No. 79–3517.**

United States District Court, E. D. Pennsylvania.

Feb. 13, 1981.

---

2. R. Angino, W. Archbold Jr., J. Quinn, Jr., The Pennsylvania No-Fault Motor Vehicle Insurance Act (1979).

Harry Lore, Philadelphia, Pa., for plaintiff.

L. Carter Anderson, Richard M. Jordan, William Morrow, Philadelphia, Pa., for defendant.

## MEMORANDUM

GILES, District Judge.

Before the court are motions to dismiss defendant Krusen, Evans and Byrne, and to dismiss plaintiff's claim for a declaration that Admiralty Rule F(4) is unconstitutional.

## I. BACKGROUND

This tort claim is brought by decedent's mother, the alleged sole heir and representative of her son's estate. She is a resident of the People's Republic of Bangladesh and here sues several law firms and other persons who participated in a settlement of the death claim of the son, a citizen of India. He presumably was killed in navigable waters in Pennsylvania on January 31, 1975, as the result of a ship collision between the S.S. CORINTHOS and the S.S. EDGAR M. QUEENY. This action was not initiated to vacate and set aside the settlement. That is the subject of a separate, previously filed lawsuit, *In re S.S. EDGAR M. QUEENY*, Civil Action No. 75–364 (E.D.Pa., filed Feb. 7, 1975). *See generally In re S.S. EDGAR M. QUEENY* (Appeal of Chatterjee), 636 F.2d 37 (3d Cir. 1980). Rather, plaintiff contends there never was a settlement of her claim due to fraudulent acts of her son-in-law, an Indian citizen, who is not a party to this action. She denies knowledge of any settlement as well as authorization of any person to represent her interests. She avers that she was ignorant of the death of her son until after the date of the purported settlement.

She seeks compensatory and punitive damages against the lawyer defendants for allegedly having negligently entered into the settlement agreement through Sri Anil Ranjan Goshal, her son-in-law, without certification of his asserted authority to act on plaintiff's behalf. Goshal, claiming to represent plaintiff and other family members, received the proceeds of the settlement. He is alleged by plaintiff to have falsely represented himself as her representative and to have forged her name to certain documents, including a power of attorney and a general release. These documents form the basis of the asserted death claim settlement in Civil Action No. 75–364.

The essence of plaintiff's claim against the Krusen, Evans and Byrne ("KEB") law firm is that it should have been sufficiently suspicious of the proffered credentials of

Goshal that it should not have paid monies over to him despite the representations and assurances of the decedent's estate's attorneys, defendants Due and Dodson, and their agent, defendant Bhishma K. Agnihotri. They represented that the settlement was authorized by all interested persons and was otherwise legitimate under all laws. Conceding that there was no direct or contractual attorney-client relationship with KEB, plaintiff argues that under the circumstances there arose, nevertheless, an implied fiduciary relationship which KEB breached and, by reason of that breach, she has been damaged.

In addition to the tort damage, plaintiff seeks a declaratory judgment under the Fifth Amendment that the notice provision in Admiralty Rule F(4) "violates the equal protection of the laws in that the rule had a disparate effect on persons living in poorer nations, for whom the shipowner should be required to either advertise in such countries as well as give personal notice," since the heirs' last known addresses may be different from that of the decedent alien seamen.

## II. CLAIMS AGAINST KRUSEN, EVANS AND BYRNE

■ KEB, which represented the owner and agents of the QUEENY in the limitation of liability proceedings, has now moved to dismiss this tort and declaratory judgment action for failure to state a cause of action upon which relief can be granted pursuant to Fed.R.Civ.Pro. 12(b)(6). As to the negligence claim, KEB argues that plaintiff failed to allege the existence of an attorney-client relationship between her and KEB, and that as a matter of law, no fiduciary responsibility should be imputed. Plaintiff resists the motion, arguing that although no contractual attorney-client relationship existed, a fiduciary duty should be recognized. Specifically, plaintiff contends that the law firm's representative, the late Robert Cox, Esq., who participated in and finalized the settlement negotiations in India with the attorneys of decedent's representatives, should have investigated Goshal's authority, should not have paid the settlement proceeds to him or any person other than an estate representative appointed under the intestacy laws of Pennsylvania or some other competent jurisdiction (such as Bangladesh), and should have paid only after approval by the United States District Court for the Eastern District of Pennsylvania as guardian for the decedent.

For the reasons set forth below, the motion to dismiss shall be granted.

The allegations of the complaint, and all reasonable inferences flowing from them, shall be taken as true for purposes of this motion. E. g., Leone v. Aetna Casualty & Surety Co., 599 F.2d 566 (3d Cir. 1979); Bogosian v. Gulf Oil Corp., 561.F.2d 434 (3d Cir. 1977), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); Tunnell v. Wiley, 514 F.2d 971 (3d Cir. 1975). See generally 5 C. Wright & A. Miller, Federal Practice and Procedure, Civil § 1357. According to these allegations and inferences, the relevant background of the complaint is as follows.

On January 31, 1975, while docked, the CORINTHOS, on which decedent was then employed, was struck by the QUEENY in navigable waters within this judicial district. On February 7, 1975, limitation of liability proceedings were commenced as Civil Action No. 75–364, by the owners, operators, and charterers of the QUEENY. A monition was issued shortly thereafter directing all persons having claims arising out of the ship collision to make due proof of the same and to answer the allegations of the complaint for exoneration from, or limitation of, liability. Pursuant to Admiralty Rule F(4), notice of the monition and complaint was sent, on or about February 24, 1975, by KEB to decedent's last known address in Calcutta, India. Plaintiff does not allege a failure of actual receipt of notice at decedent's Calcutta address. She alleges that she did not receive notice at her residence in Bangladesh and had no contempo-

raneous notice of any kind of either her son's death or the monition and complaint.[1]

In May, 1975, Goshal filed a death claim on plaintiff's behalf in the limitation action. An agent of Due and Dodson, Bhishma K. Agnihotri (Dean of the School of Law of Southern University and Mechanical College in Baton Rouge), had traveled to India, his native country, between January 31, 1975, and February 13, 1975, and secured as clients for Due and Dodson various persons having claims arising from the ship collision. Among the documents secured by Agnihotri was an attorney-client contract signed by Goshal on February 13, 1975, ostensibly as plaintiff's authorized representative. Agnihotri also received from Goshal an undated Power of Attorney purportedly executed by plaintiff. The Power of Attorney named Due and Dodson as counsel for plaintiff. KEB is not alleged to have fraudulently obtained the signatures, to have secured the claimants, or at any time to have undertaken the representation of the interests of the plaintiff or any other claimants represented by Due and Dodson.

In December, 1975, Due and Dodson, together with Agnihotri, went to New Delhi, India, and met with Robert Cox (KEB's representative) to negotiate and finalize the settlement of various maritime claims, including the death claim of decedent's estate. The KEB negotiations with Due and Dodson must be assumed to have been at arms length in the absence of any allegation by plaintiff to the contrary. A general release obtained by Due and Dodson through Goshal was delivered to Robert Cox. In exchange for ($87,000), "Prave Chatterjea, mother, A. R. Gosral, married sister, and Shri Prasanta Chatterjea and Sri Probir Chatterjea, brothers, individually and as personal representatives of the Estate of Pratik Chatterjea, Deceased," purported to release all claims against the QUEENY and all persons, agents, employees, and entities related to the ship.

The release represents that it was read before, and the signatures thereto attested by, a Judge in Delhi, India. However, prior to delivery of the money, a special power-of-attorney form was required by and delivered to KEB by Due and Dodson through Goshal.[2] It was notarized. It bore an official's name, signature, and seal attesting that plaintiff, among others, had appeared before him on December 17, 1975, in Calcutta and had read, understood, and executed the document purportedly giving Goshal the right to effect a full settlement and release of claims arising from the decedent's wrongful death. The settlement sum was then delivered to Goshal in rupee denominations.

Plaintiff argues that regardless of the absence of privity between herself and KEB, the law firm owed her a duty of non-negligent representation since, under all of the circumstances, Robert Cox should have suspected that Goshal did not have authority to act on her behalf. In support of this proposition, plaintiff cites various cases where beneficiaries have successfully asserted claims against lawyers who negligently drafted will instruments. In those cases, the attorney-client contract was with the testator only. Plaintiff relies upon, *inter alia, Heyer v. Flaig*, 70 Cal.2d 223, 449 P.2d 161, 74 Cal.Rptr. 225 (1969); *Lucas v. Hamm*, 56 Cal.2d 583, 364 P.2d 685, 15 Cal. Rptr. 821 (1961), *cert. denied*, 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962); *Biakanja v. Irving*, 49 Cal.2d 647, 320 P.2d 16 (1958). In essence, plaintiff argues that the privity concept is dead and no longer relevant in assessing the viability of legal malpractice claims. Plaintiff suggests that the proper focus should be only upon the circumstances surrounding the plaintiff's injury as opposed to an examination of the scope or undertaking of the attorney's representation. This suggestion must be rejected.

1. She did not reside either with her son or in India. At all times material to these proceedings, she resided in the People's Republic of Bangladesh.

2. In addition to the other alleged failures, plaintiff asserts that Robert Cox should have suspected the authority and credentials of Goshal since he went from Calcutta to New Delhi and back on the same day, returning with the power-of-attorney form.

The will cases are inapposite and distinguishable for at least two reasons. In the representation of a testator, there may be indirect privity in the sense that the protection of the beneficiaries' interests and, thus, the fulfillment of the testator's wishes after demise, depend entirely upon a valid instrument having been drawn. In such situations, the beneficiaries under the will can be said to be the intended and direct beneficiaries of the competency of the lawyer's services. *Cf. Restatement (Second) of Contracts* § 135 (Tent. Draft No. 3, 1967) (enforceable duty to intended beneficiary). Further, it reasonably may be found that the lawyer should have known that fulfillment of the testator's wishes for the beneficiaries depended entirely or significantly upon the lawyer's services. Beneficiaries under a will are without representation at the time of the creation of the instrument upon which their future rights may depend, and are powerless or forbidden by law to change or tamper with its composition. Such beneficiaries have been allowed to sue the drafting attorney solely on the theory that they were the intended successors to a continuing attorney-client relationship between the testator and the lawyer. This relationship has been characterized as making the beneficiary a third-party beneficiary of the attorney-client contract, *e. g., Lucas,* 56 Cal.2d at 590, 364 P.2d at 689, 15 Cal.Rptr. at 825, or as giving rise to a duty of care "in favor of certain third persons, namely, intended beneficiaries." *Heyer,* 70 Cal.2d at 227, 449 P.2d at 164, 74 Cal.Rptr. at 228.

This legal malpractice action does not involve the drafting of any instrument which was or could have become defective through the legal input of KEB. At all times leading up to the settlement, Due and Dodson undertook to represent the interests of plaintiff through Goshal. Plaintiff admits at page 8 of her memorandum opposing the motion to dismiss that "it is fair to assume that Cox, as a reasonable attorney, in all likelihood had no reason to question his opponent's authority" concerning the settlement proceedings. Under these circumstances, KEB had no legal duty of representation to plaintiff and hence, cannot be held liable on any negligence theory.[3]

Moreover, under plaintiff's negligence theory, she must show that she was damaged because she has been foreclosed from some right or property. She cannot have been foreclosed unless the settlement of the death claim was valid. That settlement cannot have been valid against her unless Goshal had authority to settle on her behalf. Thus, her theory presumes that she gave some authority to Goshal but that it was limited, not general, or exercised by him in a manner antagonistic to her interests.

The allegations of the complaint do not mesh with plaintiff's theory. Instead, plaintiff's complaint rests entirely upon the allegations of absence of authority and the presence of forgery and fraud by Goshal. The allegations are at irreconcilable odds with any notion that Goshal undertook to carry out a legitimate duty on her behalf. If there was fraud as plaintiff asserts, the settlement had no binding effect as to her and she is at liberty to assert, as she has, a death claim in the limitation of liability action. Therefore, she has experienced no compromise of any right, interest, or claim to which she may be legally entitled under a negligence theory as against KEB.

Plaintiff contends that KEB was negligent in settling her claim without federal-court approval or without the appointment of a representative of the estate by a court of competent jurisdiction. This contention also is inherently contradictory. If approv-

---

**3.** We also note that in dictum, the Third Circuit, referring to this action, said that to recover, plaintiff "would have to prove the existence of an attorney-client relationship." *In re S.S. EDGAR M. QUEENY, supra,* at 41. The Third Circuit cited Judge Huyett's opinion in *Connelly v. Wolf, Block, Schorr & Solis-Cohen,* 463 F.Supp. 914, 918 (E.D.Pa.1978). ("In order for a plaintiff to recover against a defendant law firm in a legal malpractice case, it is generally essential that an attorney-client relationship has existed between the parties.") *See Sachs v. Levy,* 216 F.Supp. 44, 46 (E.D.Pa.1963). *See generally,* Annot. 45 A.L.R.3d 1181 (1972); *see also* Annot., 55 A.L.R.3d 977 (1974).

al or appointment of a trustee is a prerequisite to a valid settlement, then the settlement was invalid, and plaintiff was not damaged. Furthermore, this argument is totally inapposite to plaintiff's claim that through Goshal's fraud there was no settlement as a matter of law. Even assuming a settlement which binds plaintiff, the only duties implicated by plaintiff's assertion that the admiralty court had not given its approval are the duty of KEB to the vessel owners, or duty of the vessel owners to plaintiff, or the duties of the litigants to the admiralty court. None of these duties supports a claim by plaintiff against KEB. Plaintiff is presently litigating the validity of the settlement in the admiralty proceeding in Civil Action No. 75–364. Therefore, this court will not pass on the merits of legal contentions appropriate only for that forum.

## III. ADMIRALTY RULE F(4)

■ Plaintiff seeks declaratory judgment relief that the notice provisions of Admiralty Rule F(4) are inadequate and unconstitutional under the Fifth Amendment because (1) plaintiff never received notice, (2) alien seamen may have families in countries with inadequate postal service, and (3) the last known address of an alien decedent may not have been his true domicile or residence.[4]

Defendant moves to dismiss this claim for relief on several grounds: *first*, that plaintiff lacks standing to question the constitutionality of the Rule since there has been no showing that notice was not received by decedent's family members; *second*, that there has been no allegation or showing that a different form of notice such as publication in the foreign country would have been more effective than the mail system of that country; and *third*, that there has been no showing of purposeful or intentional discrimination. Because we agree that the notice given was reasonable and that intentional or purposeful discrimination is neither pleaded by plaintiff nor apparent from the face of Admiralty Rule F(4), the equal protection claim, Count II of the complaint, must be dismissed.

Assuming *arguendo*, that plaintiff has standing[5] to raise this issue, we shall first treat her claim as one involving pure procedural due process. The notice required by the Fifth Amendment is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The means chosen to effectuate notice under Rule F(4) are reasonably calculated to reach persons who through the decedent's last known address, or by being otherwise known to the court, have an interest in prosecuting a death claim. This is borne out by the facts of this case. Plaintiff admits that notice was received at decedent's last address, but argues that internal family infidelity prevented all the heirs from receiving notice. In the absence of this family hostility, assertedly

---

4. The Rule reads as follows:

Upon the owner's compliance with subdivision (1) of this rule the court shall issue a notice to all persons asserting claims with respect to which the complaint seeks limitation, admonishing them to file their respective claims with the clerk of the court and to serve on the attorneys for the plaintiff a copy thereof on or before a date to be named in the notice. The date so fixed shall not be less than 30 days after issuance of the notice. For cause shown, the court may enlarge the time within which claims may be filed. The notice shall be published in such newspaper or newspapers as the court may direct once a week for four successive weeks prior to the date fixed for the filing of claims. The plaintiff not later than the day of second publication shall also mail a copy of the notice to every person known to have made any claim against the vessel or the plaintiff arising out of the voyage or trip on which the claims sought to be limited of such notice shall be mailed to the decedent at his last known address, and also to any person who shall be known to have made any claim on account of such death.

5. *See Katzenbach v. Morgan*, 384 U.S. 641, 657, 86 S.Ct. 1717, 1727, 16 L.Ed.2d 828 (1966). *See generally* Comment, *Assuming Jurisdiction Arguendo: The Rationale and Limits of Hypothetical Jurisdiction*, 127 U.Pa.L.Rev. 712 (1979).

in the form of Goshal, plaintiff would have received notice. Plaintiff's argument would require a holding that all mail-notice provisions are unconstitutional, and would require personal service upon all heirs, known and unknown, and as determined by the laws of all lands in which such heirs may reside. This request, especially as to non-resident unknown possible heirs, is constitutionally "unnecessary," *id.*, and patently unreasonable.

Finally, treating her claim as one involving the equal protection component of the Fifth Amendment, it must be dismissed as frivolous. Intentional or purposeful discrimination,[6] is neither pleaded by plaintiff, nor apparent on the face of Admiralty Rule F(4), nor can we imagine how plaintiff might show a purpose to discriminate against persons with inadequate postal service. Furthermore, we find that a person whose harm flows not from inadequate postal service, but from fraud of a family member who did have notice, has no standing to raise such an equal protection claim.

---

6. *See, e. g., Buckley v. Valeo,* 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment."); *Washington v. Davis,* 426 U.S. 229, 241–43, 96 S.Ct. 2040, 2048–49, 48 L.Ed.2d 597 (1975) (Law does not violate equal protection unless discriminatory on face, or purposefully discriminatory).