J. A20006/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

JAN JULIA, EXECUTRIX IN THE ESTATE :     IN THE SUPERIOR COURT OF
OF INGRID SOBOLEWSKA, DECEASED, :          PENNSYLVANIA
                               :
              Appellant      :
                               :
               v.          :        No. 3323 EDA 2013
                               :
LORI J. CERATO, ESQUIRE        :

Appeal from the Order Dated October 11, 2013,
in the Court of Common Pleas of Monroe County
Civil Division at No. 9653-2012-CV

JAN JULIA, EXECUTRIX IN THE ESTATE :     IN THE SUPERIOR COURT OF
OF INGRID SOBOLEWSKA, DECEASED :         PENNSYLVANIA
                               :
               v.          :
                               :
LORI J. CERATO, ESQUIRE,       :        No. 3430 EDA 2013
                               :
              Appellant      :

Appeal from the Order Dated October 11, 2013,
in the Court of Common Pleas of Monroe County
Civil Division at No. 9653-2012-CV

BEFORE:  FORD ELLIOTT, P.J.E., MUNDY AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED JANUARY 09, 2015**

Jan Julia ("Julia"), the executrix of the Estate of Ingrid Sobolewska ("the deceased"), appeals the order sustaining, in part, and denying, in part, Attorney Lori J. Cerato's Preliminary Objections to a Complaint filed by Julia

against Cerato as the scrivener of the Will of the deceased. Cerato has filed a cross-appeal. Finding no error, we affirm.

On May 7, 2008, the deceased executed a will prepared by Cerato. Therein, the deceased directed that her debts be paid out of her Estate and that, thereafter, the residue was to be divided among six beneficiaries according to percentages stated in the Will. Among the decedent's assets were an Annuity valued at $175,950.67 and an IRA account valued at $7,182.06. Unknown to Cerato, the Annuity and the IRA had beneficiary designations that differed from the testamentary scheme set out in the Will. Consequently, these assets did not pass to the Estate for distribution under the Will, but were apparently paid directly to the designated beneficiaries. Furthermore, the Estate was required to pay inheritance taxes on the Annuity and the IRA in the amount of $27,469.91 because a provision of the Will directed the Estate to pay such taxes regardless of whether the deceased's assets passed through the Will.

The deceased died on December 1, 2010. On November 16, 2012, in her capacity as executrix of the Estate only, Julia filed a Complaint against Cerato.[1] The Complaint alleged two counts, one sounding in breach of contract, the other in legal malpractice, and requested damages in an amount equaling the sum of the Annuity, the IRA, and the inheritance taxes.

---

[1] Julia is also a beneficiary under the Will.

On December 18, 2012, Cerato filed Preliminary Objections in the nature of a demurrer to the Complaint. On September 16, 2013, the trial court entered an order overruling the Preliminary Objections as to the breach of contract count and sustaining, in part, and overruling, in part, the Preliminary Objections as to the legal malpractice count, allowing Julia to seek recovery on that count as to the inheritance taxes paid by the Estate. The legal basis stated by the court cited *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983) (plurality), for the proposition that the representative of an estate cannot maintain a legal malpractice action based upon a failed legacy because the estate was not harmed. The court found, however, that the Estate was harmed as to the payment of inheritance taxes. Upon motion for reconsideration by both parties, on October 15, 2013, the court entered an order (dated October 11, 2013) revising its original holding. In this order, the trial court sustained, in part, and overruled, in part, the Preliminary Objections as to the breach of contract count also, extending its limitation to recovery for inheritance taxes only, apparently on the dictates of *Guy*.

On November 1, 2013, Julia moved to amend and certify the order dated October 11, 2013, for immediate appeal. On November 13, 2013, the court certified its order for appeal. Julia filed her notice of appeal on November 25, 2013, and Cerato filed her notice of cross-appeal on December 13, 2013.

On appeal, Julia purports to raise 13 separate issues.  However, upon closer review, all of Julia's issues go to the propriety of applying **Guy** to her Complaint such that her causes of action are not sustainable as to the Annuity and the IRA.  Cerato, on the other hand, argues that under **Guy**, Julia cannot maintain her causes of action as to the inheritance taxes either.

We begin our analysis with our standard of review:

> The standard of review we apply when reviewing a trial court's order granting preliminary objections in the nature of a demurrer is as follows:

> > Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law.  When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

> > Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint.  When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom.  Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief.  If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Liberty Mutual Insurance Co. v. Domtar Paper Co.*, 77 A.3d 1282, 1285 (Pa.Super. 2013), *appeal granted in part*, 92 A.3d 809 (Pa. 2014), quoting *Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa.Super. 2011).[2]

Preliminarily, we find that although Julia's original Complaint purported to raise a breach of contract claim as well as a legal malpractice claim, the Complaint actually sounded in legal malpractice only.

> In general, courts are cautious about permitting tort recovery based on contractual breaches. *See Glazer v. Chandler*, 414 Pa. 304, 308, 200 A.2d 416, 418 (1964); *Bash v. Bell Telephone Company of Pennsylvania*, 411 Pa.Super. 347, 601 A.2d 825 (1992). In keeping with this principle, this Court has recognized the "gist of the action" doctrine, which operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims. *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa.Super.2002). The conceptual distinction between a breach of contract claim and a tort claim has been explained as follows:

>> Although they derive from a common origin, distinct differences between civil actions for tort and contractual breach have been developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals . . . . To permit a promisee to sue his promisor in tort for

---

[2] Julia argues in her brief that in a contract action, preliminary objections in the nature of a demurrer are an improper method to challenge an incorrect allegation of damages. (Julia's brief at 20-21.) This argument was not raised in the concise statement of matters complained of on appeal; consequently, it is waived.

> breaches of contract *inter se* would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.
>
> *Id.* (quoting *Bash*, *supra* at 829). However, a breach of contract may give rise to an actionable tort where the wrong ascribed to the defendant is the gist of the action, the contract being collateral. *Id.* "The important difference between contract and tort claims is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie from the breach of duties imposed by mutual consensus." *Id.* (quoting *Redevelopment Auth. v. International Ins. Co.*, 454 Pa.Super. 374, 685 A.2d 581, 590 (1996) (*en banc*), *appeal denied*, 548 Pa. 649, 695 A.2d 787 (1997)). "In other words, a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." *Id.* (quoting *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104 (3rd Cir.Pa.2001), *cert denied*, 534 U.S. 1162, 122 S.Ct. 1173, 152 L.Ed.2d 116 (2002)).

*Pittsburgh Construction Co. v. Griffith*, 834 A.2d 572, 581-582 (Pa.Super. 2003), *appeal denied*, 852 A.2d 313 (Pa. 2004).

A review of the Complaint's averments under the purported breach of contract claim readily reveals that the allegations do not arise from the breach of any of the terms of the alleged agreement between the parties, but rather from Cerato's negligent preparation of the Will:

> 27. Attorney Cerato breached her express and implied contractual obligations to Decedent and failed to meet her professional responsibilities to Decedent in the following respects.

a. Attorney Cerato failed to outline the scope of Attorney Cerato's services to Decedent in a written engagement agreement and/or written contract.

b. Attorney Cerato failed to ascertain the assets and nature of assets of Decedent by a reasonably prepared questionnaire which was to be completed by Ingrid prior to Attorney Cerato's preparation of Ingrid's Will.

c. Attorney Cerato failed to ascertain the exact nature of, and manner in which, Decedent owned her various assets.

d. Attorney Cerato induced Ingrid to believe that all of Ingrid's assets at the time of Decedent's death would be transferred in accordance with the wishes expressed in Decedent's Will when rudimentary investigation would have revealed that the non-probate assets identified in paragraph 24 of the Complaint would not pass in accordance with the provisions of the Will.

e. As a direct result of Attorney Cerato's failure to meet her express and/or implied contractual obligations to Decedent and provide professional services of a quality which should have been provided to Ingrid, assets owned by Decedent at her death which Decedent anticipated would be assets of, and received into, Decedent's Estate by her Executrix and distributed in accordance with

Ingrid's desires expressed in the Will were not assets of, and received by, the Estate or the Executrix and were not distributed in accordance with Ingrid's desires expressed in Decedent's Will.

f. As a direct result of Attorney Cerato's failure to meet her express and/or implied contractual obligations and provide professional services of a quality which should have been provided, the Executrix was required to pay inheritance taxes from Decedent's Estate in the amount of $27,469.91, based upon the 15% inheritance tax rate imposed by the Pennsylvania Department of Revenue, on the transfer of the Annuity or proceeds of the Annuity in the amount of $175,950.67 and on the transfer of the IRA or proceeds of the IRA in the amount of $7,182.06, which payment by the Estate was mandated because Section SECOND of the Will required the residue of the Estate to pay all death taxes.

Complaint, 11/16/12 at paragraph 27, a through f.

None of these alleged failures by Cerato stems from the failure to adhere to any of the terms of any agreement between the parties, but instead arise from a breach of a duty of care, which is the heart of a negligence claim. Moreover, the central and crucial allegation, listed at Paragraph 27 c., the failure of Cerato to ascertain the exact nature of, and manner in which, the decedent owned her various assets, is plainly and

purely an averment pertaining to negligence and not to breach of contract. Consequently, as a preliminary matter, we regard Julia's Complaint as raising a claim of legal malpractice only. That being stated, the law is clear that the executrix of an estate cannot bring a legal malpractice action against the scrivener of a will which results in a failed legacy.

> We therefore turn to the question of whether the estate could sue the drafting attorney for malpractice and receive damages for the failure of the instrument to effectuate testator's intent. In any cause of action for malpractice, some harm must be shown to have occurred to the person bringing suit. In the case of a failed legacy, the estate is not harmed in any way. California, the first state to find a cause of action in malpractice for beneficiaries has held that the executor has no standing to bring an action.
>
>> Indeed, the executor of an estate has no standing to bring an action for the amount of the bequest against an attorney who negligently prepared the estate plan, since in the normal case the estate is not injured by such negligence except to the extent of the fees paid; only the beneficiaries suffer the real loss.
>
> ***Heyer v. Flaig***, 70 Cal.2d 223, 228, 449 P.2d 161, 165, 74 Cal.Rptr. 225, 229 (1969). Even if the estate would have standing to bring the suit, the fact that no harm had occurred to it and the estate has nothing to gain would remove any incentive for suit.

***Guy***, 459 A.2d at 749.

Julia attempts to characterize this language as mere ***dicta***. (Julia's brief at 20.) We disagree. ***Guy*** involved the beneficiary under a will suing the attorney scrivener of the will over a failed legacy attributable to the

attorney's malpractice. The **Guy** court decided to allow beneficiaries of such failed legacies to bring suit against the attorney scrivener under a third party beneficiary theory because relief by suit brought by the estate was unavailable.[3] Thus, the holding in **Guy** that the representative of an estate cannot maintain a legal malpractice action over a failed legacy was vital to the court's ultimate ruling. The language is not **dicta**.

We reject Julia's various other arguments. Julia contends that the language, "[e]ven if the estate would have standing to bring the suit, the fact that no harm had occurred to it and the estate has nothing to gain would remove any incentive for suit," implies that the personal representative does have standing to sue if the representative chooses to do so. (Julia's brief at 20.) We find no such implication. The statement is merely a hypothetical reason why granting third party beneficiaries the right to bring suit might be appropriate even if the personal representative had standing to sue. The clear implication is that the personal representative does not have standing.

We find no merit in Julia's public policy argument that it is burdensome to require each beneficiary to bring suit rather than allowing the executrix to bring a single action. Multiple actions filed by multiple beneficiaries could

---

[3] "[W]e nevertheless feel that a properly restricted cause of action for third party beneficiaries in accord with the principles of Restatement (Second) of Contracts § 302 (1979) is available to named legatees, such as appellee, who would otherwise have no recourse for failed legacies which result from attorney malpractice." **Guy**, 459 A.2d at 746 (emphasis added).

simply be joined and tried at a single trial. Undoubtedly, that is precisely what the attorney defendant would seek to avoid unnecessary time and expense. We also see no merit in Julia's contention that permitting the executrix to bring a malpractice action facilitates public policy by increasing the likelihood that lawyers will be held responsible for their malpractice. Rather, we find that interested beneficiaries are more likely to pursue legal action than the personal representative who may be disinterested.[4]

In sum, we agree with the trial court that Julia cannot, as executrix, maintain a legal malpractice action against Cerato based upon the failed legacies involving the Annuity and the IRA. However, the overpayment of inheritance taxes has directly damaged the Estate and will sustain a legal malpractice action.

The Complaint states that the inheritance taxes on the Annuity and the IRA were calculated at the standard 15% rate. (Complaint, 11/16/12 at paragraph 24.) However, if the Annuity and the IRA had passed through the Estate to the designated beneficiaries, a lesser inheritance tax would have resulted. Four of the six beneficiaries listed in the Will appear to be charitable takers. Pennsylvania exempts charitable bequests from inheritance tax. 72 P.S. § 9111(c)(1). Furthermore, it is possible that the remaining two beneficiaries might also qualify for a lower inheritance tax

---

[4] Instantly, it happens that the executrix is also a beneficiary and is, therefore, interested.

rate. Pennsylvania calculates inheritance taxes at a lesser rate for beneficiaries who have a certain familial relationship with the deceased. For instance, for a child of the deceased the tax rate is 4.5%, and for a sibling of the deceased, 12%. 72 P.S. § 9116(a)(1) and (a)(1.3), respectively. The remaining two beneficiaries in the Will are Julia and an individual named Susan Robinson. The Will does not reveal if either of these persons are children or siblings of the deceased, but if they are, a lower inheritance tax would apply. Consequently, taking the averments of the Complaint as true, as our standard of review requires, we find that Julia and the Estate have made out a valid action for legal malpractice based upon the overpayment of inheritance taxes which, unlike the failed legacies, directly harmed the Estate. This case can go forward as to the inheritance taxes only.

Accordingly, we will affirm the order of the trial court and remand this case for further proceedings.

Order affirmed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/9/2015