478 A.2d 713

**Mary KIRGAN**

v.

**Z. Townsend PARKS, Jr., et al.**

**No. 1227, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

July 23, 1984.

Certiorari Denied Dec. 4, 1984.

**2**

Sheldon H. Braiterman and Andre R. Weitzman, Baltimore, for appellant.

Alvin I. Frederick and Edward J. Hutchins, Jr., Baltimore, with whom were Eccleston & Seidler, Baltimore, on the brief, for appellees.

Argued before BISHOP, GARRITY and BLOOM, JJ.

BLOOM, Judge.

The principal question raised on this appeal is whether a testamentary beneficiary can maintain a cause of action, either *ex contractu* or *ex delicto,* against the testator's attorney for alleged negligence in drafting the will in such manner that the beneficiary did not receive what she believes the testator intended to leave her. Our answer to that question is "a definite maybe."[1] To that equivocation we add, "But, in any event, not if the asserted testamentary intention is not apparent on the face of the will." Other questions presented by this appeal involve somewhat more prosaic subjects—pleadings and limitations.

---

1. "I'll give you a definite maybe." Attributed to Samuel Goldwyn.

4

Appellant, Mary Kirgan, alleges that when her friend, Clarence M. Plitt, an elderly, wealthy widower, expressed a desire to change his Last Will and Testament in her favor, she referred him to her attorney, Z. Townsend Parks Jr. After Mr. Plitt's death, Mrs. Kirgan learned, to her dismay, that in the will prepared for Mr. Plitt by Mr. Parks the bequest to her of all of the testator's "tangible personal property" actually left her only about $7000 worth of furniture and other chattels. The bulk of the testator's estate, consisting of stocks, bonds and bank accounts as well as real estate, having a total value allegedly in excess of $5,000,000, was left to a charitable trust, of which appellant and First National Bank of Maryland were designated co-trustees. Mrs. Kirgan and the bank were also named co-personal representatives; Mr. Parks was designated successor to Mrs. Kirgan as trustee and personal representative.

Mrs. Kirgan first took the position that the "tangible personal property" left to her in the will included all of Mr. Plitt's stocks, bonds and cash, constituting the major assets of the estate. This position was disputed by First National Bank, the co-trustee. Mrs. Kirgan then lowered her sights to claim only the cash and the testator's bearer bonds and bearer treasury notes, but the bank disputed her claim to those holdings and instituted a declaratory judgment suit against Mrs. Kirgan. That action resulted in a determination that "tangible personal property," as those words were used in Mr. Plitt's will, did not include cash, bonds or treasury notes—a determination that added great significance to the suit Mrs. Kirgan had already filed against the appellees, Mr. Parks and the other members of his law firm, Wright and Parks.

We turn now to the history of this litigation. The original declaration, in the Superior Court of Baltimore City [now part of the Circuit Court for Baltimore City], contained two counts preceded by several pages of alleged

"facts common to all counts." We will have more to say about the form and substance of that declaration later. For the moment it is sufficient to note that the first count apparently attempted to state a cause of action for negligence in the preparation of Mr. Plitt's will and in giving Mrs. Kirgan poor legal advice as to rights she might have acquired by marrying Plitt whereas the second count, after incorporating all of the preceding allegations, accused the appellees of intentionally breaching their duties to Mary Kirgan in order to enrich themselves. The appellees, defendants, filed a motion raising the preliminary objection, under Md.Rule 323 a 5, that as testamentary beneficiary Mrs. Kirgan lacked legal capacity and standing to sue the testator's attorney for alleged negligence in drafting the will because there was no privity between them. The court granted that motion and entered judgment for the defendants, and Mrs. Kirgan appealed. In an unreported per curiam opinion, *Kirgan v. Parks,* No. 1415, September Term, 1979, filed October 7, 1980, we reversed the lower court, pointing out that the challenge to Mrs. Kirgan's status related to her *standing* to maintain the action, which might be reached by demurrer, rather than to her *legal capacity* to sue, which can be challenged by a motion raising preliminary objection.

The appellees then demurred to the declaration, whereupon Mrs. Kirgan filed an amended declaration containing eight counts in addition to the multiple page introductory statement of "facts common to all counts." Count I, sounding in tort, alleged negligence in the preparation of Mr. Plitt's will, as a result of which the will failed to make the ample and adequate provision for Mrs. Kirgan that the testator intended to make. Count II asserted basically the same cause of action but sounded in contract, on the theory that Mrs. Kirgan was a third party beneficiary of the contract of employment between testator and attorney. Count III charged the appellees with professional malpractice in giving Mrs. Kirgan improper and unsound legal advice with respect to "what rights she might have under

Maryland Law as the wife of Clarence M. Plitt to share in his estate, said advice being requested in contemplation of marriage to Clarence M. Plitt." She alleged that instead of informing her of the statutory right of a surviving spouse to one-third of the estate of the deceased spouse appellee Parks advised her that no special rights vested in a surviving spouse, wherefore she "forgoed [sic] her opportunity to marry" Plitt. Count IV alleged professional malpractice in wrongly advising Mrs. Kirgan that any claim against Plitt's estate for caring for the deceased for the last two years of his life would be for a negligible sum of money and in failing to advise her of the applicable period of limitations for making such claim. Count V alleged professional malpractice in failing to advise Mrs. Kirgan that she had a meritorious claim against the estate for breach of the decedent's promise to provide adequately for her in his will. Count VI was an alternative to Counts I and II; it asserted that if it be found that the provision for Mrs. Kirgan in Plitt's will was in accordance with his intention Parks, being her attorney, had a conflict of interest and should have advised her of Plitt's intent so she could have tried to prevail upon Plitt to honor his commitments to her. Count VII accused appellees of wrongfully failing to advise Mrs. Kirgan that they had created a conflict of interest by designating themselves successor trustees of the perpetual charitable trust created by Plitt's will. Count VIII accused appellees of intentionally breaching their duty to her in order to feather their own nests as potential successor trustees.

The amended declaration was followed by a plethora of pleadings—demurrers, general issue pleas, pleas of limitations, motion for partial summary judgment, motions for summary judgment, affidavits, voluminous memoranda of legal arguments in support of and in opposition to the demurrers and motions, interrogatories and answers thereto and exceptions to answers thereto, demands for admission of facts and responses thereto. Ultimately, each count was disposed of favorably to the appellees: demurrers to

the first, second and eighth counts were sustained without leave to amend; defendants' motions for summary judgment were granted as to the third, fourth, fifth, sixth and seventh counts. After the last count (Count III) had been disposed of upon motion, Mrs. Kirgan appealed. We dismissed that appeal on our own motion because no final judgment had been entered, whereupon the Circuit Court, at appellant's request, entered a final judgment for costs so that this third appeal could be taken.

## –COUNTS I AND II–

We begin our discussion with the question of Mrs. Kirgan's standing to sue Mr. Parks, his partners and his law firm for negligence in the preparation of Mr. Plitt's will, and we will attempt to clarify our "definite maybe" response.

Whether couched in terms of tort or contract, the claim against the attorneys for failing to carry out Mr. Plitt's testamentary intentions is one for professional malpractice—breach of the attorneys' duty of diligence and care. As Judge Wilner, speaking for this court in *Clagett v. Dacy*, 47 Md.App. 23, 25, 420 A.2d 1285 (1980), pointed out:

> The traditional rule, in Maryland and elsewhere, is that an attorney's duty of diligence and care flows only to his direct client/employer, and that, whether in an action of contract or tort, only that client/employer can recover against him for a breach of that duty. The Court of Appeals adopted that view in *Wlodarek v. Thrift*, 178 Md. 453 [13 A.2d 774] (1940), an action for breach of contract, and in *Kendall v. Rogers*, 181 Md. 606 [31 A.2d 312] (1943), an action based on negligence.

*Wlodarek* and *Kendall* both arose out of title problems. In the former, the attorney had examined title to a parcel of real estate and incorrectly reported it to be good. Title eventually passed to persons other than the attorney's client. The Court held that the successors in title could not recover from the attorney because the duty of the attorney did not extend to them. In the latter case, an attorney

employed by the purchaser of a farm to clear up a defect in title that had existed prior to the vendor's acquisition of the farm erroneously told the vendor that under the covenant of special warranty in the deed the vendor was obliged to correct the defect. After the vendor spent over $3000 to correct the title defect, he learned that he had had no liability to do so and sued the purchaser's attorney. Concluding that there was no attorney-client relationship between the parties, the Court held that there was no cause of action. Adopting a test stated in *Maryland Casualty Co. v. Price*, 231 F. 397, 401 (4th Cir., 1916), the Court said that in order to recover against an attorney for negligence a plaintiff must prove (1) the attorney's employment; (2) his neglect of a reasonable duty; and (3) loss to the client proximately caused by that neglect of duty.

The Court of Appeals did depart from the direct privity requirement in *Prescott v. Coppage*, 266 Md. 562, 296 A.2d 150 (1972). Coppage, the receiver for an insolvent deposit insurance company, sued Prescott, a court appointed special counsel for Medley, the receiver of an insolvent savings and loan association that was indebted to the insurance company, alleging that, because of erroneous advice given by Prescott, Medley had wrongfully paid moneys from his receivership estate to depositors instead of to Coppage, whose claim had priority. The Court reasoned that all creditors of the savings and loan association were third party beneficiaries of the receivership; that Prescott had a duty to aid the receiver in the performance of his duties; that the creditors, including Coppage, were thus third party beneficiaries of Prescott's performance of his court appointed duties; and that Coppage, as third party beneficiary, could sue to recover losses occasioned by improper performance of those duties.

As Judge Wilner noted in *Clagett*, 47 Md.App. at 27–28, 420 A.2d 1285, although the facts in *Prescott* were unusual, the case represented a modest relaxation of the strict privity requirement, limited to actions based upon contract and

only in favor of one who would qualify as a third party beneficiary of the contract.

Neither the Court of Appeals nor this court has heretofore had the occasion to address the specific question as to whether a testamentary beneficiary has standing to sue the attorney who drafted the testator's will. Appellate courts in California, Connecticut, Wisconsin, Nebraska, Illinois, Florida, Pennsylvania and the District of Columbia have addressed that question with somewhat varying results.

One of the leading cases is *Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961), in which named beneficiaries of a testamentary trust brought an action against the attorney who had prepared the will for the decedent, alleging negligence in overlooking the rule against perpetuities, as a result of which the trust was determined to be invalid. The Court overruled its early case of *Buckley v. Gray*, 110 Cal. 339, 42 P. 900 (1895), which had held that an attorney could not be liable to a legatee for alleged negligence in preparing a will because there was no privity between them. Instead, the Court relied on its more recent holding in *Biakanja v. Irving*, 49 Cal.2d 647, 320 P.2d 16 (1958), in which a notary public who, although not authorized to practice law, had prepared a will but negligently failed to direct proper attestation, as a result of which the will was invalid and a named legatee failed to receive his bequest. The notary was held to be liable despite the lack of privity as a matter of policy. The *Lucas* court noted that in the case before it, as in *Biakanja*, the main purpose which the testator and the defendant intended to accomplish was to provide for the transfer of property to the plaintiffs. In both instances it was foreseeable that harm would befall the beneficiaries if the bequest was invalid, and in both instances it was certain that the plaintiffs would have received the intended benefits but for the asserted negligence of the defendants. The Court noted that "if persons such as plaintiffs are not permitted to recover for the loss resulting from the negligence of the draftsman, no one would be able to do so, and the policy of

preventing future harm would be impaired." 15 Cal.Rptr. at 824. Specifically, the Court held that lack of privity did not preclude a tort action and that a beneficiary could also maintain an action in contract as a third party beneficiary of the employment agreement between attorney and client.[2]

In accord with *Lucas* is *Heyer v. Flaig*, 70 Cal.2d 223, 74 Cal.Rptr. 225, 449 P.2d 161 (1969), in which children of a testatrix were permitted to maintain an action against the attorney draftsman of the will who was aware of the testatrix's intent to remarry but failed to insert language that would prevent her husband from claiming part of the estate as a post-testamentary spouse. The Court noted, however, that contract liability was superfluous because negligence was the crux of the action in any case. Compare, however, *Hiemstra v. Huston*, 12 Cal.App.3rd 1043, 91 Cal.Rptr. 269 (1970), holding that where the will was validly executed by a testator possessed of testamentary capacity and there was no defect that prevented the testator's intention as expressed in the will from being carried out, a complaint that the attorney prepared the will in ignorance of the testator's true intentions did not state a cause of action. *See also, Ventura County Humane Society v. Holloway*, 40 Cal.App.3d 897, 115 Cal.Rptr. 464 (1974); *Garcia v. Borelli*, 129 Cal.App.3d 24, 180 Cal.Rptr. 768 (1982).

Although Nebraska apparently continues to cling to the stringent requirement of privity, *see Lilyhorn v. Dier*, 214 Neb. 728, 335 N.W.2d 554 (1983); *St. Mary's Church v. Tomek*, 212 Neb. 728, 325 N.W.2d 164 (1982), Pennsylvania, Wisconsin, Florida and the District of Columbia have followed *Lucas* and its progeny in recognizing the right of a testamentary beneficiary to recover if, because of negligence on the part of the attorney draftsman, the testamentary intent expressed in the will is frustrated. *See Guy v.*

---

2. The Court concluded, however, that the attorney was not liable because failure to understand the rule against perpetuities is not negligence.

*Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983) (where specific legacy invalidated by New Jersey probate court because legatee was a subscribing witness to the will, recovery allowed in contract but not in tort); *McAbee v. Edwards,* 340 So.2d 1167 (Fla.App.1976) (case similar to *Heyer v. Flaig, supra;* reasoning of the California Court adopted); *Needham v. Hamilton,* 459 A.2d 1060 (D.C.App.1983) (attorney admittedly left out the clause leaving residuary estate to plaintiff when he redrafted the will to insert an additional bequest).

> Litigants who have complained that they received a smaller bequest than intended because of the attorney's negligence have thus far been unsuccessful.... The difficulty faced by these plaintiffs is to establish what the deceased client had actually intended to give them.

R. Mallen and V. Levit, *Legal Malpractice* § 624 (2d ed. 1981).

In *Stowe v. Smith,* 184 Conn. 194, 441 A.2d 81 (1981), however, a complaint by testamentary beneficiary that the attorney negligently prepared a will contrary to the testatrix's instructions and negligently assured her prior to execution of the will that it did express her intentions was held to state a cause of action despite the fact that the will was valid and the testamentary dispositions expressed therein were carried out. The complainant was the beneficiary of a trust, but when he attained age 50 the trust terminated and the corpus was to go to his issue. He contended that the testatrix intended him to receive the corpus at age 50 and that his issue were intended to receive the corpus only if he died before attaining that age. Holding that the plaintiff could sue in contract, tort or both, the Court said (441 A.2d at 84):

> Because no invalidity appears on the face of the will, the present case may very well present greater obstacles to recovery than cases in which intended beneficiaries brought actions against attorneys who prepared ineffective wills. The extent of these difficulties, however, does

not affect our present determination, which concerns only whether the complaint states a cause of action.

*See Ogle v. Fuiten,* 112 Ill.App.3d 1048, 68 Ill.Dec. 491, 445 N.E.2d 1344 (1983) (mutual and reciprocal wills failed to provide for contingency that neither testator survive the other by thirty days whereby there was an intestate devolution allegedly contrary to testators' intentions to leave everything to plaintiffs if neither testator survived the other by thirty days). Compare, however, *DeMaris v. Asti,* 426 So.2d 1153 (Fla.App.1983), holding that although testamentary beneficiaries may maintain a legal malpractice action against the attorney either in tort or contract, liability can arise only if, due to the attorney's professional negligence, the testamentary intent expressed in the will is frustrated, directly resulting in loss of the beneficiary's legacy.

> There is no authority—the reasons being obvious—for the proposition that a disappointed beneficiary may prove, by evidence totally extrinsic to the will, the testator's testamentary intent was other than as expressed in his solemn and properly executed will.

*Id.,* 426 So.2d at 1154.

We need not decide whether, in an appropriate case, the beneficiary of a will can maintain a legal malpractice action in this state against the testator's attorney for negligence in preparing the will or in supervising its execution (as recognized in California, Pennsylvania, Wisconsin, Illinois, Florida and the District of Columbia), or whether an action of that nature should be in contract or in tort. For purposes of this case it is sufficient to hold, as we do, that a testamentary beneficiary (or one claiming to be an intended beneficiary) has no cause of action against the testator's attorney for alleged negligence in drafting the will when, as in this case, the will is valid, the testamentary intent *as expressed in the will* has been carried out, and there is no concession of error by the attorney. A will is a solemn document, required by statute to be in writing, signed by the testator and attested and subscribed in his presence by

two or more credible witnesses. Estates & Trusts Code Ann. § 4–102. Where the language of a will is plain and unambiguous, no extrinsic evidence is admissible to show that the testator's intention was different from that which the will discloses, because evidence intended to alter the language of a will would violate that statute. *Jones v. Holloway*, 183 Md. 40, 46–47, 36 A.2d 551 (1944).

For the reasons above expressed, we hold that the court did not err in sustaining appellees' demurrer to the first and second counts of the declaration, without leave to amend.

–COUNT VIII–

The court sustained the demurrer to the second amendment to the eighth count of the declaration (Intentional Violation of Professional Duty), without leave to amend, because the allegations were "insufficient to sustain [a] claim for punitive damages under authority of *Aerospesca Ltd. v. Butler Aviation,* 44 Md.App. 610 [411 A.2d 1055]," which held that in cases of tort arising out of a contractual relationship, punitive damages may be awarded only where actual malice is shown; implied malice is not sufficient.

The court was right with respect to the claim for punitive damages in the eighth count, but it overlooked the claim for compensatory damages, to which *Aerospesca* did not apply. Nevertheless, the court properly sustained the demurrer. For the reasons set forth above, a beneficiary of a valid will who receives the legacy provided for him in the will cannot maintain a cause of action against the attorney who drafted the will for allegedly failing to carry out the testator's intentions. It is immaterial whether the failure is alleged to have been negligent or deliberate; there is no actionable breach of duty.

–COUNTS III, IV, V, VI AND VII–

The appellees moved for summary judgment on the third, fourth, fifth, sixth and seventh counts of the amended declaration on the ground that each of those counts was barred by limitations. There were several other grounds

asserted with respect to the fourth, fifth, sixth and seventh counts but we find it unnecessary to consider them.

If Mrs. Kirgan had any cause of action based upon the preparation of the will or its execution, including any cause of action based upon alleged failure to notify the testator that the will, as prepared, did not express his true intentions, that cause of action must have accrued at the time of the testator's death and must have been known to Mrs. Kirgan by the time the will was offered for probate. If she had any cause of action based upon an alleged breach of the attorneys' duties to her as their client, that cause of action must have accrued by March 10, 1977, when appellant discharged the appellees as her attorneys and retained other counsel. The amended declaration was filed more than three years (the applicable period of limitations for civil actions at law under Md.Cts. & Jud.Proc. Code Ann. § 5–101) after March 10, 1977.

■ Ordinarily, the filing of a declaration, which in this case was well within the statutory period, tolls the statute of limitations, and any amendments to the declaration relate back to the time of the filing of the original one. If the amendment attempts to assert a new cause of action, however, the original filing does not toll the statute with respect to the new cause of action.

As we noted in *Mack Trucks, Inc. v. Webber*, 29 Md.App. 256, 262, 347 A.2d 865 (1975):

> The law is clear that if an amended declaration sets out a new cause of action, the time period for limitations purposes is measured from the date on which the cause of action accrued to the date the amended pleading is filed. If, however, no new cause is set out by the amendment then the doctrine of relation back applies and the question of limitations is determined with reference to the date of the original filing. [citations omitted].

■ The test as to whether the amended declaration sets forth the same cause of action as the original or a new and different cause of action was explicated by Chief Judge

Brune for the Court of Appeals in *Cline v. Fountain Rock Lime and Brick Co., Inc.*, 214 Md. 251, 265, 134 A.2d 304 (1957). Simply stated, if evidence which would support the amended declaration would support the original, that is, if judgment for the plaintiff on the amended declaration would bar suit on the original, the amendment does not set out a new cause of action and, therefore, is not barred by limitations. Merely changing the legal theory does not constitute a new and different cause of action; the material operative facts, not the legal theory, determine the cause of action. *Id.* at 261, 134 A.2d 304.

It thus becomes necessary to examine the original declaration to see what cause or causes of action it stated. This is a difficult task because the declaration in the case *sub judice* is a classic example of the "kitchen sink" style of pleading, i.e., one into which the pleader has thrown everything but (perhaps including) the kitchen sink. Such pleadings inspire no confidence; they suggest that the pleader is not sure what his cause of action is but hopes that if he includes enough allegations the finished product will probably contain at least one cause of action somewhere within it. A busy judge, rather than hack his way through the verbal thicket, might just assume that there is a cause of action lurking somewhere therein. At best, such pleadings do violence to Md.Rule 301 b, which provides that "[a] pleading shall be brief and concise and contain only such statements of fact as may be necessary to constitute a cause of action or ground of defense...."

Appellant's original declaration, as we have noted, included a lengthy preamble containing allegations of facts supposedly "common to all [sic] counts" of the two count declaration. It described the relationships between Mrs. Kirgan and Mr. Plitt, between Mrs. Kirgan and Mr. Parks and his law firm, between Mr. Plitt and Mr. Parks, conversations, expressions of intention and instructions given by Plitt to Parks, all leading up to the preparation and execution of Plitt's will. The preamble accused the appellees of refusing to prepare a codicil as requested by Plitt. It then

alleged the dispute between Mrs. Kirgan and her co-trustee as to the interpretation of the will and the fact that the attorneys inserted themselves into the will as successor trustees, creating a conflict of interest. There were also allegations as to the relationship between appellant and appellees after Plitt's death, including advice sought by appellant and given by appellees. The preamble refers to the decedent's intentions concerning the trust and the manner in which the attorneys frustrated those intentions. It concludes with an assertion that the appellees were aware that Plitt's estate was worth more than 4 million dollars. Following that preamble, Count I alleged that Plitt retained appellees to prepare a will leaving the bulk of his estate to Mrs. Kirgan and that appellees had a duty to Plitt as well as to Mrs. Kirgan who was also their client. It then avers that appellees breached said duty in numerous ways, most of which related to the drafting of the will and failure to draft a codicil. One alleged breach, however, was the failure to advise Mrs. Kirgan "of her statutory rights she would attain as a result of her marriage to Clarence M. Plitt." The final allegation of breach of duty was that appellees "[o]therwise acted as her attorney in a negligent manner, as set forth in the Statement of Facts." The first count of the original declaration concluded with these two paragraphs:

As a direct and proximate result of the said Defendants' negligence, errors and/or omissions, the Plaintiff Mary Kirgan has been forced to incur substantial legal expense to pursue her rights to the bulk of Clarence M. Plitt's estate, may be precluded from inheriting a substantial legacy of the estate of Clarence M. Plitt, and chose not to marry Clarence M. Plitt, to her substantial economic detriment.

WHEREFORE, said Mary Kirgan sues all Defendants jointly and severally, and claims three million dollars ($3,000,000).

The second count incorporated all prior allegations and asserted that appellees breached their duties as attorneys

for appellant intentionally and for the purpose of enriching themselves. It concluded with a claim for $3,000,000 compensatory and $3,000,000 punitive damages.

■ The operative facts of a cause of action are duty, breach and resulting harm; a cause of action is stated by alleging facts showing the existence of those three elements. The myriad of factual allegations contained in the original declaration, therefore, boils down to two causes of action, duplicitously stated in the first count:

(1) As a result of the defendants' negligent breach of duty to her and the testator to prepare a will that would carry out the testator's intention, plaintiff did not receive what the testator wanted her to have; and

(2) As a result of the defendants' negligent breach of duty to advise her properly when she sought their advice concerning marriage, plaintiff forewent an opportunity to marry Clarence Plitt and therefore lost an opportunity to be his statutory heir.

The second count asserted the same two causes of action under the alternative theory that defendants' breaches of duty were willful, deliberate and intentional rather than negligent.

The first, second and eighth counts of the amended declaration were reassertions of the first cause of action inartfully alleged in the original declaration. They failed because, as explained *supra,* the beneficiary of a valid will cannot maintain an action against the attorney who drafted the will for alleged failure of the document to state a testamentary intent other than that actually expressed therein.

■ The third count of the amended declaration reasserted the second cause of action alleged in the original declaration. The fact that the inclusion of this second cause of action made the original declaration duplicitous does not make it a new and different cause of action when reasserted in an amended pleading. *Zier v. Chesapeake Beach R. Co.,* 98 Md. 35, 42, 56 A. 385 (1903); *Mack Trucks, Inc. v.*

18

*Webber, supra,* 29 Md.App. at 264–265, 347 A.2d 865. The court erred, therefore, in granting the appellees' motion for summary judgment on the third count. Count III was not barred by limitations, which was the sole ground asserted in the motion. We pass no judgment on the legal sufficiency of Count III, since appellees elected not to demur to it. Nor are we presently concerned with how or whether appellant can prove that she actually rejected a firm offer of marriage because of Mr. Park's response to her question. That may be another matter for another day.

■ The fourth, fifth, sixth and seventh counts of the amended declaration clearly asserted entirely new and different causes of action than those contained in the original declaration. Many of the "operative facts," particularly those relating to the creation and existence of the duties allegedly owed by the appellees to Mrs. Kirgan, were the same as those set forth in the original declaration; but there were substantial differences in allegations as to breach of duty and there was no similarity between the two pleadings in the allegations as to the nature of the losses and damages incurred. The court, therefore, committed no error in granting appellees' motions for summary judgment as to those counts.

JUDGMENT REVERSED AND CASE REMANDED AS TO THIRD COUNT OF AMENDED DECLARATION.

JUDGMENT AFFIRMED AS TO ALL REMAINING COUNTS.

COSTS TO BE PAID THREE-FOURTHS BY APPELLANT, ONE-FOURTH BY APPELLEES.