**Richard L. MERRICK,**
**Plaintiff–Appellee,**

v.

**MERCANTILE–SAFE DEPOSIT &**
**TRUST COMPANY,**
**Defendant–Appellant.**

**No. 87–3168.**

United States Court of Appeals,
Fourth Circuit.

Argued June 7, 1988.

Decided Sept. 2, 1988.

Nell Berelson Strachan (Venable, Baetjer and Howard, Baltimore, Md., on brief) for defendant-appellant.

Charles Edwin Iliff, Jr. (H. Thomas Howell, Semmes, Bowen & Semmes, Baltimore, Md., on brief) for plaintiff-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, ERVIN and WILKINSON, Circuit Judges.

POWELL, Associate Justice:

The primary question presented is whether appellant, Mercantile–Safe Deposit & Trust Company ("Mercantile"), may be held liable to a beneficiary of the last will and testament of one of its trust customers, where liability is premised on Mercantile's failure to advise the testatrix of its knowledge that the proposed bequest would be legally ineffective. We must also consider whether the district court erred (i) in excluding from the jury's consideration evidence that the plaintiff's adult children benefited as a result of the settlement of related litigation, and (ii) in admitting certain expert testimony calculating plaintiff's loss. As we think Mercantile lawfully was found liable, and also agree with the rulings of the district court, we affirm.

I

Margaret Curry Chaplin, whose last will and testament is power of appointment over assets left to her, in trust, by her father, Henry M. Curry. Though originally unrestricted, this power was significantly limited when, acting on the advice of tax counsel, Mrs. Chaplin executed a partial

release in 1946. As amended by the 1946 release, Mrs. Chaplin's testamentary power of appointment could be exercised only in favor of her "descendants ... including adopted children...." In the event Mrs. Chaplin failed to exercise this power, her father's will required the trust assets to be distributed, upon her death, to her children.

Mrs. Chaplin had two children, Kitty Chaplin Spurry and Margaret ("Peggy") Chaplin Lively, both of whom were adopted. Peggy married Richard Merrick ("Merrick"), the appellee, in 1941. The union produced four children before Peggy abandoned the family in 1954. Within a month of the ensuing divorce, Peggy married Dean Lively, by whom she later had two more children.

Mrs. Chaplin's numerous wills indicate that she became estranged from Peggy following Peggy's divorce from Merrick. Between 1954 and 1972 [1], Mrs. Chaplin executed at least twenty wills or codicils that, aside from nominal bequests, made no provision for Peggy or for Peggy's children by Dean Lively. Wills executed before 1954, by contrast, had provided that Mrs. Chaplin's two daughters would share her estate equally, with each receiving half the assets over which Mrs. Chaplin had appointive power and half of the residuary estate. Merrick, however, remained close to Mrs. Chaplin following the divorce, as did his children, over whom he retained custody. This relationship was reflected in Mrs. Chaplin's wills.

The evidence at trial established that Mercantile played a significant part in the planning and drafting of these wills. Mrs. Chaplin first became a customer of Mercantile's Baltimore office in the early 1950s, when Mercantile began managing her investments pursuant to agency agreements. Over the years, Mercantile frequently advised Mrs. Chaplin in the planning of her estate, and was consistently named as sole executor and as the sole trustee of her testamentary trusts. Tr. 11–12, 612, 616–

17. It maintained a "confidential file" that contained copies of the 1946 release and of Mrs. Chaplin's various wills and codicils. Tr. 415, 628–29, 666–68. At various times, officers of Mercantile communicated with Mrs. Chaplin and with her attorney, T. Hughlett Henry, Jr. ("Henry"), concerning Mrs. Chaplin's testamentary provisions, and wrote to Henry specifically about provisions that Mrs. Chaplin wished to include in her wills. *E.g.*, Tr. 11, 416–17; App. 390, 439.

In early 1965, Mrs. Chaplin requested Henry to prepare a will appointing the Curry trust half to Mrs. Spurry and half to Merrick. Tr. 53–54. Henry prepared a draft reflecting these instructions, but informed Mrs. Chaplin and Cecil Grasty, the Mercantile trust officer in charge of Mrs. Chaplin's account, that the appointment to Merrick might not be effective "because ... Mrs. Chaplin's power of appointment under her father's Will was limited by her own partial release 'to and among her descendants....'" App. 383; Tr. 55–58. With Mercantile's approval, Henry sought the views of Pennsylvania counsel and was advised by letter dated June 10, 1965, that the proposed appointment to Merrick would indeed violate the 1946 release as he was not a "descendant" of Mrs. Chaplin. App. 385, 387; Tr. 54–55. In view of this advice, the draft of the 1965 will was revised to appoint the Curry trust half to Mrs. Spurry and half to Merrick's children. Tr. 55. Mercantile's confidential file contained copies of the foregoing correspondence, including the opinion letter of Pennsylvania counsel. Tr. 418.

In April 1969, Mrs. Chaplin requested Paul Klender, a Mercantile trust officer who by then had replaced Cecil Grasty, to come to her home in Easton, Maryland, stating that she wished to make certain changes in her will. Tr. 426–27. In anticipation of this meeting with Mrs. Chaplin, Klender obtained from Mercantile's confi-

---

**1.** Mrs. Chaplin executed her last will on June 25, 1969. This will was subsequently amended by three codicils respectively dated June 30, 1970, September 30, 1970, and September 5, 1972. App. 413–16. After 1972, no further changes were possible because Mrs. Chaplin's health deteriorated and she became disoriented. Trial Transcript ("Tr.") 108. The three codicils to Mrs. Chaplin's 1969 will are not in issue in this case.

dential file a copy of the then-current 1965 will, but he did not review the file or the correspondence generated in 1965 when that will was prepared. Tr. 418, 427. Merrick and Mrs. Spurry were also present at the 1969 meeting, and therefore knew that Mrs. Chaplin wanted the bulk of her estate, including trust assets over which she had appointive power, to be divided equally between them. Tr. 253, 358–59, 368–69. After reviewing each provision of the earlier will with Mrs. Chaplin, Klender recorded other changes requested by her and returned to Baltimore. Tr. 418, 605–06. Henry was not present. Tr. 11–12, 83, 359.

Upon returning to his office, Klender dictated a letter informing Henry of the changes proposed by Mrs. Chaplin. Klender's letter stated that these changes would "necessitate re-writing the entire will," and directed Henry to "proceed with the provision [sic] promptly." App. 390. Klender did not consult with any of Mercantile's attorneys or other estate planning personnel at Mercantile concerning the appropriateness of these changes. Tr. 416, 418. Based on Klender's letter, Henry drafted a will incorporating the requested provisions, and forwarded a copy to Klender for his review. See Tr. 96, 428; App. 418. With respect to Mrs. Chaplin's power of appointment, the new will—in accord with Klender's instructions—provided as follows:

> SEVENTH: All the property, real and personal, over which I have power of appointment or disposition under the Last Will and Testament of my father, Henry M. Curry, ..., as modified by partial release of power of appointment executed by me, dated August 28, 1946, ..., and which at the time of my death is held in trust by Mellon National Bank and Trust Company, ..., hereby exercising said power of appointment as modified, I give, bequeath, devise and appoint in equal shares, in fee simple and absolutely and free of any trust unto my daughter, KITTY C. SPURRY, and to my son-in-law, RICHARD L. MERRICK.... In the event that my son-in-law, RICHARD L. MERRICK, shall not be living at the time of my death, I give, devise and

bequeath the half-share of said property otherwise payable to him to such of his descendants, who are descendants of my daughter, Margaret, then living, in equal shares per stirpes. App. 394–95.

The will further recited that Merrick, though referred to as Mrs. Chaplin's son-in-law for the purpose of identification, was no longer married to Peggy. App. 411. Neither Henry nor Klender questioned the validity of appointing trust assets to Merrick, and Mrs. Chaplin executed her new will in their presence as subscribing witnesses on June 25, 1969. Tr. 419; App. 411–12. Klender duly placed a copy of the will in Mercantile's confidential file, where it remained until Mrs. Chaplin's death.

Mrs. Chaplin died on November 29, 1981. Tr. 107, 646. Her will was offered for Maryland probate by Mercantile, which was designated in the will as the sole executor and sole trustee of all testamentary trusts created thereby. See Tr. 646; App. 393, 395, 396, 398, 411. Mellon Bank, N.A. ("Mellon Bank") was advised of Mrs. Chaplin's exercise of her power of appointment over the trust created by her father's will. Mellon Bank questioned the validity of the exercise of the power because Merrick was not a "descendant" of Mrs. Chaplin as required by the 1946 release. In May 1982, Mellon petitioned the Court of Common Pleas of Allegheny County, Pennsylvania, for directions as to the appropriate distribution of the trust. Tr. 255; App. 423. Merrick, his four adult children, and Peggy's guardian ad litem were joined as parties. Mercantile was not a party. Tr. 255; App. 496.

Merrick conceded that he was not an eligible appointee. See Tr. 256; App. 473. See also Henry's Exh. 43. He and his children contended, however, that Merrick should be treated as if he had predeceased Mrs. Chaplin. This treatment would allow the share purportedly appointed to Merrick to pass to his children under the alternative provision of Mrs. Chaplin's will, a result they argued would do as little violence to Mrs. Chaplin's testamentary design as it was possible under the circumstances. App. 428, 458, 474; Henry's Exh. 43. On

July 13, 1983, the Court of Common Pleas rendered a decision rejecting these contentions. It held instead that the entire appointment failed and that, in default of a valid appointment by Mrs. Chaplin, the original terms of her father's will dictated that the trust assets pass to her two adopted daughters. App. 430–31.

In February 1985, Merrick commenced this diversity action in the United States District Court for the District of Maryland against Henry and his law firm, charging them with negligence in drafting Mrs. Chaplin's will without consulting the 1946 release. App. 5, 8. The complaint was later amended to add a negligence claim against Mercantile, grounded in its failure to inform Mrs. Chaplin that the attempted appointment of the trust assets would be ineffectual.[2] Merrick's children, who initially were also plaintiffs in the suit, were voluntarily dismissed before trial.

The case was submitted to the jury following five days of testimony. After the jury retired, but before the verdict was returned, Henry and his firm reached a settlement with Merrick pursuant to which he was paid $300,000. The jury returned a verdict against all defendants, jointly and severally, in the amount of $500,000. This appeal followed.

On appeal, Mercantile advances numerous contentions that may be viewed as raising three principal grounds for reversal. The thrust of the first of these is that Mercantile owed no duty of care to Merrick and that, even if it did, its failure to identify the invalidity of the appointment provision of the will cannot be deemed a breach of any such duty. Mercantile further argues that the district court erred in admitting into evidence an incomplete account of the Pennsylvania proceedings. Finally, Mercantile contends that the testimony of Merrick's economic expert impermissibly overstated Merrick's loss. We shall discuss each of these contentions in turn.

## II

In this diversity action, we look primarily to Maryland law. Under the relevant Maryland precedents, two alternative principles appear to govern whether a party to a contract owes to a non-party a duty to exercise due care in the discharge of his contractual undertakings; and, accordingly, whether the non-party injured by the negligent performance of a party's promise or undertaking may sue the party in tort. *See generally Jacques v. First National Bank*, 307 Md. 527, 534–35, 515 A.2d 756 (1986); 3 F. Harper, F. James, & O. Gray, The Law of Torts, § 18.5, at 705, 709–10 & n. 24 (2d ed. 1986). Where the party's failure to exercise due care creates a risk of personal injury, the principal determinant of duty is foreseeability. By contrast, where the risk created is one of economic loss only, as in the instant case, Maryland courts generally require an "intimate nexus" between the party and the non-party as a condition to the imposition of tort liability. *See Weisman v. Connors*, 312 Md. 428, 445–46, 540 A.2d 783 (1988); *Jacques*, 307 Md. at 534–35, 515 A.2d 756. "This intimate nexus is satisfied by contractual

---

**2.** In pertinent part, the amended complaint alleged that

18. Mercantile Safe–Deposit and Trust Company owed a duty through its contractual and fiduciary relationship with Mrs. Chaplin and breached it by failing to inform her that Richard L. Merrick did not qualify under her power of appointment.

19. T. Hughlett Henry owed a duty through his contractual relationship with Mrs. Chaplin and breached it by failing to inform her that Richard L. Merrick did not qualify under her power of appointment.

. . . .

21. Had Margaret Curry Chaplin known that she could not appoint a portion of the Curry Trust to her son-in-law, Richard L. Merrick, she would have restructured her bequests to carry out her intent to leave Richard L. Merrick one-half of the property over which she had power of disposition, which consisted of her personal estate and the Curry Trust. But for the negligence of T. Hughlett Henry, Jr., acting in his capacity as a partner in Henry, Hairston & Price, and the negligence of Paul Klender and other agents of Mercantile–Safe Deposit and Trust Company, acting in their capacity as financial advisors, Mr. Merrick would have received the equivalent of one-half of the trust corpus pursuant to the clear intent of Mrs. Chaplin. App. 18–19.

privity or its equivalent."[3] *Jacques*, 307 Md. at 534–35, 515 A.2d 756. *See also William Iselin & Co., Inc. v. Landau*, 71 N.Y.2d 420, 425, 527 N.Y.S.2d 176, 522 N.E.2d 21 (1988) ("the noncontractual party must demonstrate a relationship ... 'sufficiently approaching privity.'") (citation omitted).

Consistent with their decision to extend tort duties to parties in contractual privity *or its equivalent*, the Maryland courts have recognized that such duties may extend to a third party beneficiary of a contract. *See Flaherty v. Weinberg*, 303 Md. 116, 130–31, 492 A.2d 618 (1985) (an attorney owes a duty of care to a non-client where the latter is the third party beneficiary of the attorney's contract with the client). *See also Glanzer v. Shepard*, 233 N.Y. 236, 238–39, 135 N.E. 275 (1922). To establish the existence of the requisite duty under this theory, the non-party plaintiff must show that a party actually intended to benefit him, and that the promisee's intent to confer upon him this benefit "was a direct purpose of the transaction or relationship." *Flaherty*, 303 Md. at 130–31, 492 A.2d 618. *See also Marlboro Shirt Co. v. American District Telegraph Co.*,

196 Md. 565, 569, 77 A.2d 776 (1951) ("[I]t must clearly appear that the parties intended to recognize him as the primary party in interest and as privy to the promise. An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee."). If the third party beneficiary proves the remaining elements of a negligence cause of action, he may recover against the promisor in tort. *See Flaherty*, 303 Md. at 131, 492 A.2d 618.[4]

In light of the foregoing, it is clear that if Merrick was a third party beneficiary of Mercantile's undertaking to provide estate planning services to Mrs. Chaplin, then Mercantile's duty to exercise due care in rendering these services would run not only to Mrs. Chaplin but to Merrick as well. Mercantile advances, however, four arguments in support of its contention that this theory could not properly result in its liability to Merrick under the circumstances of this case. First, Mercantile argues that it never formally contracted to plan Mrs. Chaplin's estate. Claiming it served as a mere "go between" in conveying her testamentary instructions to Henry, Mercantile insists its only contractual obligation was to manage her investments pursuant to

**3.** In developing this doctrine, the Maryland Court of Appeals relied heavily on the leading opinions of Judge Cardozo in *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922), and *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931). *See Weisman*, 312 Md. at 446–47, 540 A.2d 783; *Jacques*, 307 Md. at 535–36, 515 A.2d 756. In *Glanzer*, a group of public weighers was held liable to a buyer of beans for negligence in certifying the weight of certain beans, notwithstanding that the weighers had been engaged and paid only by the seller. A duty was owed to the buyer because its use of the weighers' certificates "was not an indirect or collateral consequence of the actions of the weighers. It was a consequence which, to the weighers' knowledge, was the end and aim of the transaction.... Growing out of a contract, [the duty] has none the less an origin not exclusively contractual. Given the contract and the relation, the duty is imposed by law." *Glanzer*, 233 N.Y. at 238–39, 135 N.E. 275.

In *Ultramares*, the New York Court of Appeals held that public accountants who carelessly prepared and certified a balance sheet for a corporation could not be held liable in negligence to a factor who made loans to the corporation in reliance upon the balance sheet. Judge Cardozo distinguished *Glanzer* on the ground that the

bond between the weighers and the buyer "was so close as to approach that of privity, if not completely one with it," as had been attested by the *Glanzer* court's statement that the same result would have obtained if the case had been analyzed under contract rules governing third party beneficiaries. *Ultramares*, 255 N.Y. at 182–83, 174 N.E. 441. By contrast, "[n]o one would be likely to urge that there was a contractual relation, or even one approaching it, at the root of any duty that was owing from [the accountants] to the indeterminate class of persons who, presently or in the future, might deal with [the corporation] in reliance on the audit." *Id.*

**4.** As the Maryland courts had recognized before *Flaherty*, the plaintiff who qualifies as a third-party beneficiary has the more traditional choice of recovering on the contract. *See Prescott v. Coppage*, 266 Md. 562, 296 A.2d 150 (1972); *Kirgan v. Parks*, 60 Md.App. 1, 8–9, 478 A.2d 713 (1984) (reading *Prescott* as limited to actions based upon contract), *cert. denied*, 301 Md. 639, 484 A.2d 724 (1984). Cf. *Glanzer*, 233 N.Y. at 241, 135 N.E. 275 (noting that tort liability of defendant could be restated as "a phase or an extension" of the rule governing contract claims by third party beneficiaries).

agency agreements. Second, Mercantile contends that, in any event, Merrick was no more than an incidental beneficiary of its undertaking to assist Mrs. Chaplin in planning her estate. There was no intention on its part to benefit Merrick, Mercantile claims. Third, Mercantile argues that the district court's instructions concerning Merrick's claim that he was owed a duty as a third-party beneficiary were materially incomplete. Finally, Mercantile asserts that even if it owed Merrick a duty of care, its failure to recognize the legal insufficiency of the attempted appointment cannot constitute a breach of this duty. In Mercantile's view, the question of validity was one of law and it was unauthorized to practice law. Therefore, only Mrs. Chaplin's attorney, Henry, had a duty to identify the invalidity, and he alone should be held solely responsible for Merrick's loss. We find these arguments unpersuasive.

### A

■ We think the evidence amply warranted a finding that Mercantile's contractual relationship with Mrs. Chaplin was not limited strictly to managing her investments. The jury was not required to believe that Mrs. Chaplin summoned Mercantile's officers to her Easton home from Baltimore—a 61–mile journey—solely for the ministerial task of conveying her instructions to her lawyer, who after all was her friend and next-door neighbor. Tr. 89. Further, Henry testified that Mercantile advised Mrs. Chaplin over a period of several years on the planning of her estate, and that he was routinely instructed by Mercantile concerning her testamentary designs. Tr. 11–12. There was also evidence that Mercantile assisted in the actual draft-

ing of her wills.[5] *E.g.,* Tr. 617; App. 439. The jury easily could have believed that Mercantile furnished these services to ensure that Mrs. Chaplin designated Mercantile as her executor and trustee under her will. Serving as the fiduciary of a large estate can be highly remunerative. Banks and trust companies with trust or fiduciary departments customarily provide estate planning services without making a contemporary charge. Mercantile apparently was paid contemporarily by Mrs. Chaplin only for managing her agency account, and Klender testified to Mercantile's practice of "accommodating" its agency customers in order to secure their estate and trust business. *See* Tr. 421–22, 629. By virtue of Mercantile's undertaking to provide estate planning advice to Mrs. Chaplin in consideration of being named the fiduciary under her will and testamentary trusts, an implied contractual relationship existed between them that was broader than the formal contract governing their agency relationship.

### B

■ We find no merit in Mercantile's contention that Merrick was only an incidental beneficiary of its relationship with Mrs. Chaplin. It cannot be disputed that Mrs. Chaplin intended that Merrick be a primary beneficiary of her estate and Mercantile knew this. Klender's 1969 letter to Henry specifically instructed him to draft a provision appointing the Curry trust assets "absolutely in equal shares to Kitty Spurry and Richard Merrick or their descendants if they are deceased." App. 390. Mrs. Chaplin's intent is equally explicit in the will itself. *See* App. 394–95; *Guy v. Liederbach,* 501 Pa. 47, 61, 459 A.2d 744 (1983).

---

5. The jury also had before it certain letters written to Mrs. Chaplin by Mercantile's officers. On June 24, 1965, one day after Mrs. Chaplin executed her 1965 will, Grasty wrote her that

> As I indicated to you, I shall have an estimate prepared to indicate how your estate might work out and the respective beneficial interests. With this before us, we can consider whether any further adjustments are indicated in favor of Dick. Henry's Exh. 19.

On June 29, 1970, Klender wrote to Mrs. Chaplin concerning her last will as follows:

> It has been one year since you executed your Last Will and Testament and it may be well for you to review same [*sic*] to see if any changes need to be made. I have no suggestions to make, but if you would like me to go over the Will with you, I will be glad to do so. Merrick's Exh. 32.

We think these letters further undermine Mercantile's claims that it played no role in planning Mrs. Chaplin's estate and that it acted, at her request, as a mere messenger between her and Henry.

Further, Mercantile cannot now claim that it was not also *its* intention to benefit Merrick. As we have already noted, there was an implied contractual relationship between Mercantile and Mrs. Chaplin pursuant to which Mercantile was to render estate planning services in consideration of being named the fiduciary under her will. On the facts of this case, Mercantile knew that Merrick was to be a primary beneficiary of these services.

### C

■ We also reject Mercantile's claim that the district court's instructions were erroneous. The jury was instructed on the third-party beneficiary question as follows:

The claim by Mr. Merrick against Mercantile–Safe Deposit and Trust Company arises from a contractual relationship between Mercantile and Margaret Curry Chaplin. If you find from a preponderance of the evidence that Mr. Merrick was what is termed a third-party beneficiary of that contract and that his loss and damage flowed from a breach of that contract, then you shall find in favor of Mr. Merrick against Mercantile–Safe Deposit and Trust.

Mr. Merrick is a third party beneficiary of the contract between Mrs. Chaplin and Mercantile, if you find from a preponderance of the evidence that the parties to the contract intended a portion of the contract to be for his benefit. In order for Mr. Merrick to prevail on this theory, you must find by a preponderance of the evidence that Mrs. Chaplin and Mercantile intended to recognize him as a primary party in interest. App. 326–29.

Mercantile complains that this formulation of the theory departed from *Marlboro Shirt Co. v. American District Telegraph Co.*, 196 Md. 565, 77 A.2d 776 (1951), and *Mackubin v. Curtiss–Wright Corp.*, 190 Md. 52, 57 A.2d 318 (1948), by failing to require explicitly that the jury find that Merrick (i) was a *direct* beneficiary rather than an incidental one, and (ii) that he was privy to the promise.[6]

It is extremely unlikely that the jury could have concluded that Merrick was only an incidental beneficiary after finding, as required by the district court's instruction, that both parties "intended a portion of the contract to be for [Merrick's] benefit ... [and] intended to recognize him as a primary party in interest." Nor can we see how Mercantile could have been prejudiced by the court's failure to require a finding that Merrick was "privy to" or knew of the agreement, since it is not disputed that he was fully aware of the relationship between the testatrix and Mercantile and of her testamentary intentions. Indeed, Merrick was present at the April 1969 meeting when Mercantile was advised by Mrs.

---

6. In addition to instructing the jury on Merrick's possible status as a third party beneficiary as a source of Mercantile's tort duty toward him, the district court instructed the jury that a tort duty could arise alternatively from a gratuitous undertaking to act for Merrick's benefit. The jury was instructed that if it found that Mercantile voluntarily undertook to provide estate planning or will-drafting services to Mrs. Chaplin in 1969, this undertaking would furnish an alternative source of its duty to those who foreseeably could be damaged by the negligent performance of this undertaking. Mercantile objects to this instruction on the ground that Mercantile, as a party to a contract, " 'owe[d] no duty' " to others " 'for which it may be made responsible in action in tort for negligence, if it does not perform its contract.' " Brief for Appellant (quoting *Marlboro Shirt*, 196 Md. at 571–72, 77 A.2d 776). The Maryland Court of Appeals has apparently disapproved of this language in *Marlboro Shirt*, at least to the extent it implies that the rights created by the contract furnish the exclusive basis for recovery by nonparties for the tortious performance of the contract. See *Council of Co–Owners Atlantis Condominium Inc. v. Whiting–Turner Contracting Co.*, 308 Md. 18, 29–30, 517 A.2d 336 (1986). In accordance with our usual practice in diversity cases where state law is uncertain, *see, e.g., Pittman v. Wilson County*, 839 F.2d 225, 229 n. 8 (4th Cir.1988); *Jaffe–Spindler Co. v. Genesco, Inc.*, 747 F.2d 253, 257 n. 5 (4th Cir.1984), we defer to the district court's reasonable conclusion that its instruction correctly resolved this ambiguity in Maryland law.

We also are unpersuaded that the district court erred in failing to define "negligent performance" in connection with this instruction. The concepts of negligence and ordinary care were otherwise adequately explained to the jury. We think that the instructions, taken as a whole, adequately informed the jury of the controlling legal principles. See *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir.1987).

Chaplin as to her testamentary wishes.[7]
*Supra*, at 1097.

### D

■ Finally, we also disagree with Mercantile's argument that it cannot be held liable for failing to alert Mrs. Chaplin to the ineffectiveness of the appointment because it is not authorized to practice law. Mercantile's duty to exercise due care under the circumstances surrounding the drafting of Mrs. Chaplin's last will did not require it to perform any legal analysis or to give legal advice. The legal issue had been identified and resolved in 1965 when Henry alerted Mercantile to the likelihood that Merrick would not qualify as Mrs. Chaplin's "descendant" and when, with the knowledge and approval of Mercantile, Henry secured the written opinion of Pennsylvania counsel confirming Merrick's ineligibility.

We express no view as to the possible extent of Mercantile's liability under Maryland law on facts different from these. Here, however, Mercantile's files contained copies of the opinion letter of Pennsylvania counsel, and Mercantile must be charged with knowledge of the conclusion set forth therein. As noted above, Merrick's ineligibility was not a secondary or relatively unimportant part of Mrs. Chaplin's testamentary intent. As the jury found, she intended that Merrick be a primary beneficiary, and Mercantile knew this.[8]

### III

■ Mercantile also questions certain of the district court's evidentiary rulings. The district court admitted into evidence the decision of the Pennsylvania court awarding the Curry trust assets to Peggy and Mrs. Spurry in equal shares, but it refused to admit documentary evidence that this ruling was appealed and that the parties ultimately settled. Under the terms of the Pennsylvania settlement, half of the trust assets were distributed to Mrs. Spurry. Merrick's children, who were adults, received 22.5% of the other half in cash. The balance was placed in a trust for Peggy's benefit, with distribution upon her death to her six children, including her four children by Merrick, in equal shares. Mercantile contends that the exclusion of this evidence violated Federal Rule of Evidence 106 because it suggested—contrary to the facts—that Peggy received the funds intended for Merrick, and erroneously precluded the jury from off-setting the children's recovery against Merrick's damages.

Rule 106 provides that "[w]hen a writing ... or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing ... which ought in fairness to be considered contemporaneously with it." This Rule is designed to avoid creating a misleading impression by taking a statement out of its proper context, or otherwise conveying a distorted picture to

---

7. In any event, the instruction given by the district court comports with the more recent statement of the third party beneficiary doctrine in *Flaherty,* where the Maryland Court of Appeals omitted any mention of this requirement. We defer to the district court's choice of this precedent as the basis for its instruction.

8. Of course, a lawyer may not delegate his professional duty to another. *See, e.g., Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225, 234 (2d Cir.1977). But this elementary principle has no relevance on the facts presented here. In the usual circumstances surrounding the drafting of a will, a testatrix will meet with both legal and estate planning advisors to determine how best to fulfill her intentions. The responsibility for errors of law in this situation would of course normally rest with the lawyer. In view of the unusual facts of this case, Mercantile's duty to exercise care in planning Mrs. Chaplin's estate was independent from the duty owed by Mrs. Chaplin's attorney. Where, as here, the negligence of two persons, acting independently, combine to produce the injury complained of, neither can escape liability on the ground that his or its negligence was not the sole cause of the injury. *See Mehlman v. Powell,* 281 Md. 269, 276, 378 A.2d 1121 (1977). *See also Morgan v. Cohen,* 309 Md. 304, 310–11, 523 A.2d 1003 (1987). The fact that Henry was negligent in failing to recognize the invalidity of the appointment does not immunize Mercantile from liability where its own files contained information that explicitly revealed the legal barrier to fulfillment of Mrs. Chaplin's known wishes through the appointment of Merrick.

the jury by the selective introduction of documents that are part of a comprehensive whole. *See United States v. Jamar,* 561 F.2d 1103, 1108–09 (4th Cir.1977); 1 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 106[03] (1986). *Cf.* 7 Wigmore, Wigmore on Evidence § 2110, at 648 (Chadbourne rev. 1978).

In the circumstances of this case, however, evidence concerning the settlement of the Pennsylvania litigation, though arguably helpful to an understanding of the entire picture, was not germane to the jury's assessment of Merrick's damages and was properly excluded pursuant to Rule 403.[9] Merrick received nothing in the settlement and, indeed, never contended that the appointment in his favor was valid. Although his adult children did receive cash and an interest in the trust created for their mother's benefit, the record does not support the conclusion that their recovery was in any way intended to compensate Merrick for his loss. On the contrary, the record supports the conclusion that the children shared in the settlement in consideration for their willingness to compromise their own independent legal claim to the trust assets—a claim that was inconsistent with a recovery by Merrick and rested on their status as alternative appointees under Mrs. Chaplin's will. We see no legal basis for imputing to Merrick a recovery by the alternative appointees solely because they happen to be his children.

To be sure, Merrick consented to the settlement, and doubtless was happy that his children received something on account of their claims. The value of a parent's satisfaction in these circumstances, however, is wholly speculative. It also is likely that the jury, if allowed to consider the settlement award to the adult children, would have been confused as to a legal question—namely, whether there should be an off-set against Merrick's claim in this case. The likelihood of jury confusion was especially strong in light of the factual complexities that the case otherwise necessarily placed before the jury. The district judge reasonably could have concluded that evidence of a settlement that provided no payment to Merrick would have been improper. We cannot say, on this record, that in so doing the district court abused the broad discretion vested in it by Rule 403.[10]

■ We are not persuaded to the contrary by Mercantile's reliance on certain deposition testimony given by Merrick in the present litigation. Before his children were dismissed from this suit against Mercantile, Merrick testified that if his children recovered "in this case" the value of the share of the trust appointed to him, then he should not recover anything. App. 251. Mercantile argues that this deposition testimony, which the district court also excluded, indicates that Merrick himself viewed his interests as identical to those of his children, and militates against the district

9. Rule 403 provides, in pertinent part, that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

10. We do not agree with Mercantile's argument that Rule 106 required the introduction of the settlement even if such evidence was otherwise not admissible. Brief for Appellant 38–39 (citing *United States v. Sutton,* 801 F.2d 1346, 1368 (D.C.Cir.1986)). While substantial authority contradicts the general proposition on which Mercantile relies, *see, e.g., U.S. Football League v. National Football League,* 842 F.2d 1335, 1375–76 (2d Cir.1988) (hearsay); *United States v. Costner,* 684 F.2d 370, 373 (6th Cir.1982); *United States v. Burreson,* 643 F.2d 1344, 1349 (9th Cir.) (hearsay), *cert. denied,* 454 U.S. 830,

102 S.Ct. 125, 70 L.Ed.2d 106 (1981), we do not think that, even if otherwise correct, this broad assertion applies where inadmissibility is grounded on Rule 403. *See* E. Cleary, McCormick on Evidence § 56, at 145–46 & n. 9 (3d ed. 1984); C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5078, at 378 (1977). Unlike other exclusionary rules, Rule 403 does not explicitly provide that it is subject to other evidentiary provisions. Moreover, the common law rule of completeness, of which Rule 106 is an expression, *see* Advisory Committee Note, did not require the introduction of unduly prejudicial material. *See* C. Wright & K. Graham, *supra,* at 373. Indeed, the "fairness" standard prescribed by Rule 106 strongly suggests the appropriateness of the type of inquiry more specifically required by Rule 403. *See id.* at 378.

court's decision to exclude the earlier settlement. We disagree.

Merrick's deposition testimony in this case cannot change the fact that his children recovered in the Pennsylvania litigation on account of their own legal claims. In any event, Mercantile mischaracterizes the true import of this testimony. It simply reflected Merrick's correct understanding that his interests *in this litigation* were adverse to those of his children, who also were plaintiffs at the time of the deposition. Their interests were adverse because Merrick could recover against Mercantile only if he could persuade the jury that, had Mrs. Chaplin been advised of the ineffectiveness of the 1969 appointment, she would have restructured her estate to ensure that he received a sum equal to half the value of the trust. Under Merrick's theory, Mrs. Chaplin would have taken this compensating bequest out of the share of the residuary estate otherwise left to Mrs. Spurry, and she would have appointed the entire trust to Mrs. Spurry instead. Merrick's children, on the other hand, could prevail only to the extent they could persuade the same jury that Mrs. Chaplin's bounty would have been redirected toward them, and away from Merrick. As the district court correctly understood, Merrick's deposition testimony merely recognized that the jury that was to hear this case would award him no recovery to the extent it chose to credit his children's theory of the case. *See* App. 251–52. The testimony had nothing to do with the Pennsylvania litigation, and cannot reasonably be characterized as an admission by Merrick that he benefited from the settlement in that case. Moreover, once the children were dismissed from this case, Merrick's deposition testimony became irrelevant. We see no abuse of discretion in the district court's decision to exclude the testimony.

## IV

■ Mercantile questions the action of the district court in allowing the jury to consider certain testimony by Merrick's economic expert, Peter Newman. As we have already noted, Merrick's theory of damages was that, had Mrs. Chaplin been advised of the ineffectiveness of the appointment in her 1969 will, she would have fashioned an alternative estate plan that would have increased his share of the residue by an amount equal to half the value of the trust assets. This value (half of the total value of the trust) was fixed at $309,944 as of the date in 1982 when Mellon Bank filed its final account, shortly before petitioning the Pennsylvania court for directions. Newman testified that this sum would have increased to $400,000 by early 1983, assuming a rate of appreciation comparable to that experienced by the New York Stock Exchange Composite Index during that same time. Newman then relied on several alternative investment assumptions, and estimated that by the time of trial, in September of 1987, the value of Merrick's half of the trust assets would have increased to approximately $656,000. Mercantile argues that it is entitled to a new trial because Newman's testimony was based on unrealistic assumptions. But Newman was qualified as an expert without objection, and he was cross-examined at length. Moreover, Mercantile chose not to call its own expert to give testimony contrary to Newman's estimates. The jury chose to credit Newman's testimony substantially, as it awarded $500,000 against all defendants. We see no reason to disturb its judgment. *See, e.g., International Wood Processors v. Power Dry, Inc.*, 792 F.2d 416, 431 (4th Cir.1986).

■ Finally, Mercantile questions the propriety of permitting Newman to testify concerning the present value of Merrick's loss. The theory underlying this contention is that Newman's discussion of the appreciation that would have occurred in the sum owed to Merrick from the time of the loss to the date of judgment must be considered a form of prejudgment interest on that sum. Mercantile argues that such an award is impermissible in a tort action for an unliquidated amount. In Mercantile's view, the amount of Merrick's loss could not be deemed liquidated because the value of the alternative bequest posited by Merrick's theory of damages could not have been known with certainty until the

date of judgment. We think that, to the extent Mercantile is correct in characterizing the appreciation in the sum owed to Merrick as prejudgment interest, the award clearly was proper.

Under Maryland law the general rule is that prejudgment interest should be left to the discretion of the jury, or the trial court when sitting without a jury. *See I.W. Berman Properties v. Porter Brothers, Inc.*, 276 Md. 1, 18–19, 344 A.2d 65 (1975). *See also Bituminous Construction, Inc. v. Rucker Enterprises, Inc.*, 816 F.2d 965, 969 (4th Cir.1987). While Mercantile correctly notes that prejudgment interest is generally not recoverable in tort actions, such an award may be allowed where the damages sustained are liquidated. *See Taylor v. Wahby*, 271 Md. 101, 112–13, 314 A.2d 100 (1974). This qualification applies, and interest may be recovered, even where the damages sustained "while not liquidated in the strict sense of the term" are otherwise "readily ascertainable" before the entry of judgment. *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 256 F.2d 946, 952–53 (4th Cir.1958), *aff'd*, 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959). *See also Taylor v. Wahby*, 271 Md. at 112–13, 314 A.2d 100 (noting that, despite the usual tort rule, interest may be recovered in a tort action for the conversion of chattels where the goods converted have a "readily ascertainable market value").

We think Merrick's loss was adequately liquidated within the meaning of these precedents. The value of the trust in 1982, when Mellon Bank filed its final account, was readily ascertainable. If Newman's estimates as to appreciation in this value are viewed as prejudgment interest, the pertinent inquiry is whether the 1982 value of the trust assets furnished a reliable yardstick by which to measure Merrick's damages. We think it did, setting his claim apart from cases involving "bodily harm, emotional distress, or similar intangible elements of damages...." *Robert C. Herd & Co.*, 256 F.2d at 952. Accordingly, we do not think the district court erred in leaving this question to the sound discretion of the jury.

V

We conclude that, in all the circumstances, the jury was warranted in finding that Mercantile breached a duty of care it owed to Merrick. We also conclude that the district court did not abuse its discretion in excluding evidence of the Pennsylvania settlement or in permitting the recovery of prejudgment interest. Accordingly, we affirm the judgment of the district court.